THE PEOPLE ex rel., ABRAM H. DAILEY et al., Respondents,
*v.* WALTER L. LIVINGSTON, Appellant.

The provisions of the act of 1872, " to regulate elections in the city of
Brooklyn " (§§ 12, 13, chap. 575, Laws of 1872), providing for preserving
the ballots, are germane to the subject expressed in the title; their
incorporation in the act, therefore, does not render it violative of the
provision of the State constitution, declaring that no private or local
bill shall embrace more than one subject; and that shall be expressed
in the title.   (Art. 3, § 16.)

The provision of said act (§ 13), requiring the board of canvassers to
deposit the ballot-boxes in the department of police, does not require
the canvassers personally to carry the boxes to the police department,
nor does it require the boxes to be deposited at police headquarters; a
delivery of the boxes by the canvassers to police officers assigned for
that purpose, and a deposit of said boxes by such officers in the precint
station-houses, is a substantial compliance with the provision.

The provision requiring, that after the canvass is completed and the
ballots returned to the boxes, said boxes shall be " securely sealed
up by the canvassers," contemplates that the boxes shall be so sealed
that they cannot be opened without breaking the sealing.

Where the inspectors sealed the apertures to the boxes, through which the
ballots were inserted, and the canvassers did not remove these seals,
but delivered the boxes to the police department without further sealing,
*held,* that this was not a compliance with the act.

But, *held,* that this provision was directory only, and where it is proved satis-
factorily that the boxes had been kept "undisturbed and inviolate,"
the omission of the canvassers to seal up the boxes, as contemplated,
does not render the ballots inadmissible as evidence.

The burden of proof, however, is upon a party producing the ballot-boxes
to show to the satisfaction of a jury that they have been kept undis-
turbed and inviolate; it is not sufficient that a mere probability of
security is proved, the fact must be shown with a reasonable degree of
certainty.

The use of the ballots so preserved, as evidence, is not limited to cases
of city officers merely, they are admissible as well in cases of other offi-
cers voted for in the city of Brooklyn.

In an action of *quo warranto* wherein the ballot-boxes were produced and
the ballots received in evidence to impeach the accuracy of the returns of
the inspectors of election, and wherein it appeared that the boxes had not
been sealed up by the canvassers, and had been kept insecurely, so
that the question whether the ballots were the identical ones voted was
one of fact for the jury, the court instructed the jury, in substance, that to
justify their rejection, it must appear affirmatively by direct evidence,
or from circumstances, that the boxes had been tampered with, *held,*
error; and that the error was fatal to the judgment.

It is not essential, in an exception to a portion of a charge, to repeat the language excepted to, although this is strictly the more accurate practice; it is sufficient if the portion objected to is pointed out with such accuracy that there can be no misapprehension as to the application of the exception.

*People ex rel. Dailey* v. *Livingston*, (18 Hun, 59), reversed.

(Argued October 3, 1879; decided December 19, 1879.)

Appeal from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of relator, entered upon a verdict. (Reported below, 18 Hun, 59.)

The nature of the action and the facts are set forth sufficiently in the opinion.

*Walter L. Livingston*, appellant in person. It was error to allow a recount of the ballot-boxes chapter 571 of Laws of 1872, respecting the sealing and custody of them not having been complied with. (*Worrall* v. *Parmelee*, 1 N. Y., 519; *Baird* v. *Gillett*, 47 id., 186; *Starbird* v. *Barrons*, 43 id., 200; *Williams* v. *Fitch*, 18 id., 546; 1 Kent's Com., 462; *Waller* v. *Harris*, 20 Wend., 561; *McCluskey* v. *Cromwell*, 1 Kern., 601; *Newell* v. *People*, 3 Seld., 97; *Dryfuss* v. *Budges*, 45 Miss., 247; *In re Em. Ind. Sv'gs Bk.*, 8 W. Dig., 208, 212; Sedgwick on Stat. and Const. Law, 368; *People* v. *Schermerhorn*, 19 Barb., 558; *Cook* v. *Kelly*, 12 Abb. Pr., 35, 36; affir'd 14 id., 466; Dwarris on Stats., 641; *Hardmann* v. *Bowen*, 39 N. Y., 199; *Smith* v. *People*, 47 id., 339; 6 Abb. [N. S.], 276; 1 Greenl. Laws of N. Y., 316; Laws of 1799, chap. 51; *Jackson* v. *Hobby*, 20 J. R., 357, 361; *Richardson* v. *Gere*, 21 Wend., 156, 157; *People* v. *Hadden*, 3 Denio, 220; *Fleming* v. *Halenbeck*, 7 Barb., 271; *Smith* v. *Randall*, 3 Hill, 495; *People* v. *Sackett*, 14 Mich., 329; Am. Law of Elections, § 277; *Goodwin* v. *Wilson*, 42d Congress; *Butler* v. *Lehman*, 1 Bartlett, 354; *Kline* v. *Verree*, 1 id., 381.) A recount was error, because the evidence showed affirmatively that the ballots had been unsafely kept, and in such a way as to make tampering with

them easy. (McCreary's Am. Law of Elections, 209, 210; *Butler* v. *Lehman*, 1 Bartlett, 354; *Kline* v. *Verree*, id., 38; 1 id., 176; *Archer* v. *Allen*, id., 169, 176; *People* v. *Sackett*, 14 Mich., 328.) The ballots should not have been admitted in evidence, because there was no proof that they were the same ones that had been voted at the election. (*State* v. *Donnerwirth*, 21 Ohio, 216.) The recount of the ballots should not have been allowed, because the provisions of the act of 1872, under which they were recounted, do not apply to the election of a county officer, which the surrogate is. (1 R. S. [6th ed.], § 57, p. 441; Sedgwick on Stat. Law, 209, 228 [note]; Dwarris on Stats., 699, 726; *Smith* v. *People*, 47 N. Y., 330–339; *Chase* v. *Lord*, 6 Abb. [N. S.], 276.) The recount of the ballots should not have been allowed, because the provisions of the act of 1872, under which it was allowed, are unconstitutional. (*People* v. *O'Brien*, 38 N. Y., 193, 195; *Gasken* v. *Meek*, 42 id., 186; *People* v. *Allen*, 42 id., 404–419, 420.) Before the jury could reject the ballot-boxes, they must have evidence of tampering with the boxes. (*People* v. *Cicott*, 16 Mich., 283; *State* v. *Donnerwirth*, 21 Ohio, 216; *Butler* v. *Lehman*, 1 Bartlett, 260; *Kline* v. *Verree*, id., 390; *Jutte* v. *Hughes*, 67 N. Y., 273; *Wehle* v. *Haviland*, 42 How. Pr., 399; *Benedict* v. *Johnston*, 2 Lans., 94–97; *Valleau* v. *Smith*, 8 W. Dig., 217.)

*B. F. Tracy*, for respondent. The provisions of the statute as to the duties of the inspectors are directory, and a failure to comply with all of them would not affect the certificate of election. (*People ex rel.* v. *Cook*, 8 N. Y., 67, 82, 87, 88, 89; *People ex rel.* v. *Higgins*, 3 Mich., 233; *People* v. *Van Cleve*, 1 id., 362; *People* v. *Cicott*, 16 id., 283; *People* v. *Sackett*, 14 id., 320; *People* v. *Cook*, 14 Barb., 290, 326–328; *Pradat* v. *Ramsay*, 47 Miss., 24; *Hudson* v. *Solomon*, 19 Kas., 177.) It was proper to show by the voters that the certificate was false. (*People* v. *Pease*, 27 N. Y., 45; *Hudson* v. *Solomon*, 19 Kansas, 177; *Dough-*

*erty* v. *Hope*, 3 Denio, 251; *Elmendorf* v. *Mayor*, 25 Wend., 696; *Merchant* v. *Langworthy*, 6 Hill, 646; *Ex parte Heath*, 3 id., 43; *Cleveland* v. *Porter*, 74 Ill., 76; 61 Ind., 416.) The election law of 1872 was not unconstitutional. (*People ex rel.* v. *Laurence*, 26 Barb., 177; *Sharp* v. *Mayor*, 31 id., 572; 18 How. Pr., 572; *Vil. of Gloversville* v. *Howell*, 70 N. Y., 290.) To make an exception available the nature and ground of it must be specified to the court, or it will not be entertained. (*Walsh* v. *Wash. Ins. Co.*, 32 N. Y., 440.)

CHURCH, Ch. J. This is a *quo warranto* to try the title to the office of surrogate of Kings county. The relator and defendant were opposing candidates for that office at the general election held in 1876. The county canvassers declared that the defendant was elected by 288 majority and gave him the certificate of election. At the trial, after considerable proof had been given, it was admitted by the defendant that there was an error in the returns of one hundred in each of two districts and forty in another district in his favor by allowing which would reduce his majority to forty-eight. The relator claimed that the proof showed that other corrections should be made in the returns which would obliterate this majority and give him a majority, but as to these the evidence was not conclusive and the jury might have found in favor of the defendant, and the judge in his charge expressed the opinion that aside from the recount of the ballots the evidence showed that the defendant was elected by a small majority. The ballot-boxes were produced and the ballots recounted, and in four election districts there was a sufficient discrepancy found between the returns for those districts and the ballots, as appeared by the recount, to give the relator about 150 majority, and the jury found a verdict in his favor. The questions involved therefore relate to the admissibility of the ballot-boxes and the ballots therein found, and the rulings at the trial in respect to them. The authority for preserving the ballots is contained in an act of the Legislature passed in 1872 and amended in 1873 and

1874, and is applicable only to the city of Brooklyn. This act is exceptional upon this point and is a departure from the long established policy of the State. Since 1787 under the various election laws which have been passed, the ballots are required to be destroyed immediately after the canvass is completed. (1 Greenleaf's Laws of N. Y., 316 ; chap. 51, Laws of 1799.) And such is the existing statute. (1 R. S. [6th ed.], 441.)

A point is made that the act is unconstitutional, upon the ground that the title does not fairly express the subject. The title is, " An act to regulate elections in the city of Brooklyn." This objection is not tenable. The provisions for preserving the ballots to be used as evidence are *germane* to the regulation of elections, and a means which the Legislature determined proper to verify the ballots received at the election. This statute is therefore binding and operative, and must be construed according to established rules, irrespective of our views of its wisdom or policy. It provides for a board of inspectors whose duty it is to receive the ballots and deposit them in the boxes and also for a board of canvassers whose duty it is to count the votes and make a return of the result. The twelfth section provides that immediately after closing the polls " the inspectors shall *securely seal* the several ballot-boxes and each of them, and deliver the same together with the poll-lists and registers of electors to the board of canvassers ;" and the thirteenth section requires, after the canvass is completed, that the ballots shall be replaced in the boxes and each box shall be " *securely sealed up* by the canvassers, and they shall then be deposited by them in the department of police, and shall there be kept *undisturbed and inviolate*, until they are needed at the next election unless required as evidence in any court of record." Several objections were made to the introduction of the boxes and the recount of the ballots :

First — That the canvassers did not themselves deliver the boxes to the police department. The boxes were delivered to the inspectors by police officers assigned to that duty,

who retained the keys until the boxes were delivered to the canvassers, and such officers received the boxes from the canvassers and deposited them in the precinct station-houses. This was a substantial compliance with the requirement.

Second — It was objected that the boxes should have been deposited at police headquarters. The department of police is under the supervision of three police commissioners, who designate police headquarters and precinct station-houses. They all belong to the department, and the deposit of these boxes in the respective precinct station-houses was by the direction or sanction of the commissioners, and was, we think, a compliance with the act.

Third — That the boxes were not properly sealed. This psesents a more serious question. The statute requires the inspectors to securely seal the boxes, and that they shall be securely sealed up by the canvassers. The inspectors sealed the aperture through which the ballots were inserted. The canvassers did not remove these seals but delivered the boxes without other sealing. The statute is silent as to the mode or manner of sealing. The sealing up of the aperture was all that would seem to be necessary for safety in merely passing the boxes over to the canvassers. The only opportunity for fraud would be in putting in ballots, and the sealing of the aperture would be a sufficient protection. If the statute requires nothing more than sealing the aperture by the canvassers, then the adoption of the sealing by the inspectors, if it remained perfect, would be a sufficient compliance with the statute on their part.

It is quite apparent that for the purposes of protection it would be desirable that the boxes should be so sealed that they could not be opened without breaking the sealing, and, looking at the objects of this law and the great temptation and danger of fraud in tampering with the ballots, we think that this construction should be given to the act. Although the same expression, applied to the inspectors and canvassers might ordinarily be presumed to mean the same thing, yet if it can be seen that the purpose of the two sealings and the

object to be effected are different the court should so construe the expression as to accomplish the object in each case. Besides, the words used are not identical.    The twelfth section requires the inspectors to *securely seal* the boxes ; the thirteenth section declares that they shall be *securely sealed up* by the canvassers.

When the canvassers received the boxes the apertures were sealed and they had no occasion to disturb such sealing.    The statute evidently contemplates that the canvassers are to do something, and if anything, it must be something in addition to what has been before done by the inspectors.    The object of their sealing is to preserve the identity of the boxes precisely as they were when they passed from their hands.    To accomplish this the sealing must be done so that if disturbed it would be discovered, and when the statute says that the boxes must be sealed up and the object is patent, it follows that, it requires the affirmative act of sealing on the part of the canvassers.    Under the act of 1787 before referred to, the sheriff of each county received the ballots and delivered them to the secretary of State, after which a joint committee of the two houses of the Legislature canvassed the votes and announced the result.    The act required the ballots delivered to the sheriff to be sealed up, so that if the seal was broken it would be discovered, and the expression in the act in question I think should be construed in the same way.

The contest between George Clinton and John Jay for governor in 1792 while this act was in force is interesting more as a historical incident than as a judicial precedent. Mr. Clinton was declared elected by rejecting the ballots in three counties, Otsego, Tioga and Clinton.    The two latter would not have changed the result, but the rejection of the votes in Otsego, did change the result, and the votes of that county were rejected upon the ground that the person who carried the votes to Albany was not properly authorized to do so.    The sheriff of that county had accepted an incompatible office and his successor had not qualified.    He there-

fore acted as sheriff in receiving the ballots and deputed the bearer to deliver them to the secretary of State. This decision created great excitement, but Governor Clinton was sworn in and held the office.

Under the later decisions of the courts it is probable that the sheriff would have been regarded as an officer *de facto* and his acts as to third persons valid. (1 Ham. Political History, 62.)

Assuming the construction above indicated as to the sealing, the more important question remains whether, if it is proved satisfactorily that the boxes have been kept inviolate and undisturbed, the omission of the canvassers to seal up the boxes as contemplated, renders the ballots inadmissible as evidence.

The defendant strenuously insists that this omission is fatal to the admission of the ballots as evidence, and that considerations of public policy demand that this exceptional innovation upon the long established policy of the State in providing against such evidence by requiring the ballots to be destroyed should not be sustained unless the statute is is strictly complied with.

There is plausibility and force in the argument but after careful consideration of the subject and the authorities bearing upon it, I have arrived, with some hesitation, at a conclusion adverse to the defendant's views. It is to be observed that the terms of the statute do not make the admissibility of this evidence depend upon a compliance with the requirements of the act. The statute does not create this evidence but impliedly recognizes it as evidence. It must be regarded as common law evidence. In *quo warranto* the returns and certificates are deemed only *prima facie* evidence and the parties are permitted to go behind them and show what took place at the election, the number of votes cast and for whom. An election is for the purpose of ascertaining the will of the electors and in controversies of this character that will may be shown by any available legal evidence. The ballots them-selves are of course the highest and best evidence if they are

actually preserved, but the liabilities of tampering and fraud doubtless induced the Legislature to require their destruction. But for the statute there can be no doubt of their being common law evidence if they are identified. The preservation of the boxes inviolate being the ultimate object of the statute if that is in fact accomplished the omission to observe all the formalities to secure that object is not fatal to the evidence. Such omission would weaken the force of the evidence and induce greater caution in regarding it, but would not necessarily destroy it. (*People* v. *Cook*, 8 N. Y., 67.)

We are without precedents in this State, but the tendency of the decisions in those States where similar laws exist favor this view. In *People* v. *Higgins* (3 Mich., 233), the aperture of one of the boxes was left unsealed and the court held that the provision was directory merely. The case seems not to have been very fully considered. In *People* v. *Cicott* (16 Mich., 283, 306), where there was imperfect sealing the trial judge charged that there was not the same certainty of their correctness which the law would otherwise have presumed, but submitted it to the jury to determine whether they would rely upon the inspectors' returns, or the recount of the ballots and this was approved by the appellate court. (See, also, *People* v. *Sackett*, 14 Mich., 320; *Pendat* v. *Ramsay*, 47 Miss., 24; *Hudson* v. *Solomon*, 19 Kan., 177.)

Judge COOLEY, who, I infer from his opinion, in *People* v. *Sackett* (*supra*), regarded with disfavor the evidence of a recount of the ballots, without a substantial compliance with the statute, recognizes the rule above stated. He says: "If however the ballots have not been kept as required by law and surrounded by such securities as the law has prescribed with a view to their safe preservation as the best evidence of the election, it would seem that they should not be received in evidence at all; or if received, that it should be left to the jury to determine upon all the circumstances of the case, whether they constitute more reliable evidence than the inspectors' certificate, which is usually prepared immediately on the close of the election, and upon an actual count

288      PEOPLE ex rel. DAILEY et al. *v.* LIVINGSTON      [Dec.,

Opinion of the Court, per CHURCH, Ch. J.

of the ballots as then made by the officers whose duty it is to do so." (Cooley's Const. Lim., 625.)

This rule is quite as favorable to the admissibility of the ballots as can be justified, assuming that no defect or error appears in the returns, either upon their face or by evidence *aliunde*. In the case at bar the court ruled that the contents of no box should be allowed to be recounted without preliminary evidence tending to show some misconduct, omission or error in the returns. Evidence was given with that view as to the four districts where the discrepancies appeared before the boxes were opened. This evidence tended to show some error or incorrectness at least in making the returns, but it is not claimed that it established or scarcely tended to establish the precise difference which actually appeared by the recount. It was, however, pertinent and appropriate for the consideration of the jury in determining the credit which should be given them when brought in conflict with the ballots.

It was insisted that the boxes were not admissible for the reason that they were not properly kept. The statute does not prescribe the particular manner of keeping the boxes, but only that they shall be preserved undisturbed and inviolate. The evidence produced on the trial showed that they had been kept in the police department under the general supervision of the police officers. Members of the police force testified to the manner in which they were kept, and gave evidence tending to show their inviolability. Although it must be conceded that the security of the boxes was not made so perfect as to preclude the possibility, and even some probability that access might have been had to them for improper purposes, yet I do not think the judge would have been justified in deciding as matter of law that they had not been preserved inviolate, and withdrawing the question from the jury. It was a question of fact for the jury under proper instructions from the court.

The point that the ballots could only be counted for city officers is not tenable for two reasons: 1. The statute applies

to all officers voted for in the city of Brooklyn, and no distinction is made either expressly or by implication between city, county and State officers. 2. If actually preserved the ballots would probably be admissible as common-law evidence even if the statute applied only to city officers.

It remains only to consider the treatment of the question by the trial judge in his charge. It is but just to say that the charge as a whole is very impartial and presents an able exposition of the various questions involved, but in laying down a rule for the guidance of the jury in respect to the ballot-boxes we feel constrained to hold that the learned judge committed a material error which may have operated injuriously to the defendant. At the close of his charge the judge used the following language: "If, on the other hand, you see any evidence * * * warranting you in believing that these boxes have been tampered with, and that a fraud has been committed by putting in ballots or taking out ballots after the election, you will reject these boxes entirely. But you must have evidence of the fact,—something you can point to and rely on,—before you can come to any such conclusion as that."

This language implies that affirmative evidence of actual tampering or fraud was necessary to justify the jury in disregarding the ballot-boxes. Subsequently the judge, in answer to a request of counsel, said: "There is no direct testimony, I charge you, in answer to a question that no witness has come on the stand and testified to the fact that these ballot-boxes have been tampered with. If you find that they have been it will be an inference from the testimony as to the mode in which they were kept and brought into court for examination of the case, and if you can find on examination, that there is room for such inference, on your part, then you will make that inference; and if you find there is not, you will not do it."

This may be regarded as a modification of the language first quoted to the extent that tampering or fraud might be inferred from circumstances, but the difference is more in

form than substance, for whatever may be properly inferred from circumstances is in a legal sense proved. In both, the jury were instructed that to justify the rejection of the boxes it must appear affirmatively by direct evidence or from circumstances that the ballot-boxes had been interfered with and a fraud committed. This was error. The error is in putting upon the party against whom the ballot-boxes are introduced the *onus* of proving that they had in fact been tampered with. The statute requires the ballot-boxes to be preserved undisturbed and inviolate, and it is incumbent upon the party offering the evidence to show that they had been so kept, not beyond a mere possibility of interference, but that they were intact to the satisfaction of the jury. The burden was upon the relator to satisfy the jury that the boxes had remained inviolate. The returns are the primary evidence of the result of an election. They are made immediately upon canvassing the votes and the votes are canvassed at the close of the polls in public, and presumably in the presence of the friends of both parties. The result is at once publicly announced and duplicate returns are filed in different public offices. They may be impeached for fraud or mistake, but in attempting to remedy one evil, we should be cautious not to open the door to another and far greater evil. After the election it is known just how many votes are required to change the result, the ballots themselves cannot be identified.— they have no car-mark. Everything depends upon keeping the ballot-boxes secure and the difficulty of doing this for several months in the face of temptation and opportunity, requires that the utmost scrutiny and care should be exercised in receiving the evidence, especially as the election of every county and State officer may depend upon a recount of the ballots in the city of Brooklyn under this act. Every consideration of public policy as well as the ordinary rules of evidence require that the party offering this evidence should establish the fact that the ballots are genuine. It is not sufficient that a mere probability of security is proved, but the fact must be shown with a

·1879.]    People ex rel. Dailey et al. *v.* Livingston.    291

Opinion of the Court, per Church, Ch. J

reasonable degree of certainty. If the boxes have been rigorously preserved the ballots are the best and highest evidence, but if not, they are not only the weakest but the most dangerous evidence. The jury might not be satisfied with the proof of identity, and yet be unable to find from the evidence that actual tampering or fraud had been committed. The question upon whom the burden of proof rests is deemed material, and an error in this respect has been held fatal. (*Lamb* v. *Camden and Amboy R. R. and T. Co.*, 46 N. Y., 271.) The rule becomes more important in a case like this, on account of the difficulty if not impossibility of ever proving actual fraud, and the grave consequences which may flow from the adoption of a contrary rule. The evidence tending to impeach the accuracy of the returns may or may not in a given case aid in supporting the boxes. If such evidence pointed to a mistake of fifty votes in one district and the box showed just that difference, it would be very persuasive evidence that the box was right, while evidence showing merely that the returns overran the poll-lists a few votes would not materially strengthen a ballot-box which showed a discrepancy of 100 votes. While, as we have seen, the judge was right in submitting the question to the jury whether the ballots were the identical ballots voted, and the jury might from the evidence have so found, yet they would have been warranted in coming to a contrary conclusion and in rejecting the boxes. They were not sealed up by the canvassers, and the manner of their keeping was loose and might have been deemed unsatisfactory. During the four or five months intervening between the election and the production of the boxes in court, they were specially guarded only fourteen days. A portion of them were retained for a considerable period in the public muster room of the station-house, another portion were kept a part of the time in the cellar of a station-house accessible from the interior of the building, and still another portion in the cellar of another station-house with a door leading to the sidewalk, fastened only on the outside by a

292 People ex rel. Dailey et al. *v.* Livingston. [Dec.,

Opinion of the Court, per Church, Ch. J.

common padlock. If the proper instructions had been given that it was incumbent upon the relator to prove that the boxes had remained undisturbed and inviolate, the jury might have found that the evidence fell short of establishing that fact, at all events we cannot say as matter of law that they would not have so found. The learned counsel for the relator in answer to this point insists, first, that the exception was not sufficiently specific. At the close of the charge several requests to charge were made by the respective parties, and then the case states that the defendant excepted to the closing of the charge in regard to the ballot-boxes. It would have been strictly more accurate to have repeated the language excepted to, but the exception referred to the close of the charge and the subject. There was but a single idea in that part of the charge, and that was expressed in clear and emphatic language. The exception could not have referred to anything else, and it is difficult to see how there could have been any misapprehension as to the application of the exception. We think that the rule requiring specific exceptions was substantially, if not technically complied with. The learned counsel also argued on the merits that any other rule than that laid down by the judge would require the relator to prove a negative that the boxes had not been tampered with. If the question is put in that form the duty of proving a negative would be upon the relator because upon the condition of inviolability only is the evidence of any value, but the proper form of the question is whether the boxes have been preserved undisturbed, and in that form the relator holds the affirmative. Upon the trial the relator assumed this burden and introduced evidence for that purpose, but the trial judge changed the *onus* to the defendant and substantially required him to prove that the boxes had not been kept inviolate. Mr. McCreary, in his work on Contested Elections, lays down, I think, the correct rule. He says: "Before the ballot-boxes should be allowed in evidence to overturn the official count and return, it should appear *affirmatively* that

they have been safely kept by the proper custodian of the law, that they have not been exposed to the public or handled by unauthorized persons, and that no opportunity has been given for tampering with them. If this is believed to be a rule founded upon the presumption that a fraud or crime has been committed the answer is that the rule does no more than make choice between two presumptions of law which in this instance come in conflict and cannot both prevail" (page 209). This rule applied to the subject is eminently just, while a different one requiring that the fact of tampering should be made to appear to warrant the rejection of the boxes would lead to fraudulent practices and would be a dangerous innovation upon established rules.

Some of my brethern while concurring with the general views here expressed entertain doubts whether by reason of the omission to seal up the boxes and the insecure manner in which they were kept, a recount of the ballots ought to have been allowed to prevail over the returns, and this statement is made at their request.

The judgment must be reversed and a new trial ordered, costs to abide the event.

All concur, except Earl, J., not voting.

Judgment reversed.