Points decided.

[Filed December 19, 1888.]

## GEORGE A. HARTMAN, Respondent, *v.* J. N. YOUNG, APPELLANT.

ELECTIONS — VOTERS — BEST EVIDENCE OF THE INTENTION OF. — It is a primary rule of elections that the ballots constitute the best, the primary evidence of the intention and choice of the voters.

BALLOTS — MUST BE PRESERVED FROM TAMPERING — OFFICIAL COUNT. — In determining a contested election, the evidence of the ballots actually cast will control that furnished by the official count, provided the ballots have been preserved and protected from tampering.

OFFICIAL RETURNS — PRIMA FACIE EVIDENCE OF RESULT OF ELECTION. — The official returns when duly certified are *prima facie* evidence that the result is as declared, but such returns or canvass is never conclusive, unless made so by statute. As a *quasi* record, it is entitled to the presumption of regularity, and is *prima facie* evidence of its integrity.

ELECTION CONTEST — BALLOTS BEST EVIDENCE. — As between ballots shown or admitted to be the identical ballots cast by the voters and such official count, the ballots are the best evidence.

ONUS PROBANDI — PLAINTIFF MUST PROVE THAT BALLOTS OFFERED TO IMPEACH THE OFFICIAL COUNT ARE GENUINE. — The burden of proof rests on the plaintiff. He must establish to the satisfaction of the jury or trial court that the ballots have been kept intact, and are the genuine, identical ballots cast at the election, otherwise they will receive no credence and be rejected as unworthy of credit.

STATUTE — DIRECTORY WHEN. — Provisions of the statute for the safe-keeping of ballots are treated by the courts as directory, and when it is shown that the ballots have been securely kept and preserved inviolate, they will not be excluded as evidence on account of some omission to comply with their directions.

BALLOT-BOX — PRESERVING OF THE BALLOTS. — Where the court finds that the ballots have been safely kept and preserved, that no one has tampered with them, and, notwithstanding the opening of the box for the purpose stated, that the ballots were the genuine and identical ballots cast by the voters of South Pendleton precinct, the legal conclusion drawn therefrom by the trial court, viz., that "such ballots are the best evidence and entitled to be recounted," is in conformity with law, and such as it pronounces on that state of facts.

APPEAL from Umatilla County.

*D. W. Bailey* and *W. M. Ramsey*, for Respondent.

*Richard Williams, J. C. Leisure*, and *Fred Page Tustin*, for Appellants.

LORD, J. — This was a proceeding under the provisions of title 4, chapter 14, sections 2544–2548, Oregon code, to contest the right of the defendant to the office of county clerk of Umatilla County, to which he was declared elected by the board of canvassers of said county.

In substance, the facts alleged impeach the correctness of the returns as certified, in the wrongful and erroneous counting of the votes of South Pendleton precinct, etc., whereby the defendant was declared duly elected, etc.

The answer, after making the usual denials, alleged affirmatively and separately that the poll-book of said precinct, signed and attested as required by law, was certified and returned to the plaintiff, then county clerk of said county, showing that an election had been held in that precinct at the date therein stated, giving the number of votes, and that the defendant had received the majority, etc., that the same was duly canvassed by the board, etc., and that the defendant was duly elected county clerk of said county; that the ballots polled at said election in said precinct were duly enveloped and sealed as required by law, and returned to said county clerk, etc., and that he, being then and there a candidate for the office of county clerk, etc., after he had received the said ballots, enveloped and sealed as aforesaid, did unlawfully break the seal and remove therefrom the said ballots, etc., and ever since the same have been in the hands of said plaintiff in a loose and unprotected condition, affording an opportunity for changes and alterations of said ballots, and on account of such circumstances the said ballots ought not to be recounted, etc.

The reply put in issue the affirmative matter set up, and the trial proceeded to judgment in favor of the plaintiff.

It thus appears upon the issue made by the pleadings that the subject-matter upon which the contest is based

is the recount of the vote of South Pendleton precinct, and which, according to the judgment, if allowable, is conclusive of the right of the parties.

For the determination of the question presented by the record, it perhaps would have been more satisfactory to the court if counsel for the defendant had requested the court below to make its findings fuller in respect to the particular facts upon which such question is raised.

The difficulty, however, seems to have been that he acted upon the hypothesis that the evidence as to the preservation of the ballots of South Pendleton precinct failed or was incompetent to establish their identity as a matter of law, and therefore inadmissible, when the only way, it would seem, the question which he seeks to have litigated and determined can be raised on this record is, Is the judgment and legal conclusion which the trial court draws from the facts found such as the law pronounces?

It will therefore be necessary to state the substance of some of the evidence to show hereafter that it was competent and admissible, and also to show there was evidence tending to support the findings of the trial court in the particular questioned by this record.

The evidence certified to us in the record discloses that the poll-book, the ballot-box and the ballots therein, of South Pendleton precinct were duly delivered to the clerk after the election, and the ballot-box, according to the testimony of Mr. Watron, one of the judges of the election, "was sealed over the slit on the top with my name on it, and had two strips of paper around it, both sealed. . . . . The box could not be opened without tearing the papers off"; that the contestant, who is county clerk, received the poll-book and ballot-box of said precinct, and the key to the box, on the fifth day of June, and kept the box in the vault in the condition as delivered until the twelfth

day of that month, when he took it from the vault and carried it into the main office, where the vote was being canvassed, and in the presence of the other two members of the board, and several other persons who were present and overlooking the canvass, and opened it for the purpose of finding the poll-book, on the assumption that it was locked up in the box, as was the case in some of the other precincts; that he only raised up the ballots, and seeing that the poll-book was not there, immediately returned them into the ballot-box and relocked it, and that soon after he found the poll-book in the vault where he had deposited it when handed to him by Mr. Watron; that the ballot-box and its contents so locked, but not resealed, were returned to the vault, which was made of brick, with iron doors, and which stood open during the day, and that no one had a key to the ballot-box but himself, and that he and his deputy had a key to the vault; that various persons were permitted to go into the vault, such as he knew, and remain one and two hours; that the box remained on the shelf in the vault until called for by this proceeding, undisturbed, and that it had been kept by him safely, and had not been exposed to the public, or been tampered with, and that the box had never been opened except as stated, or in the possession of any one except himself, and that the contents of the box were the same as when he received it.

Substantially, upon this evidence, the trial court found "that it appeared to the satisfaction of the court, and that affirmatively, on part of the contestant, George A. Hartman, that the said ballots of South Pendleton precinct for Umatilla County have been kept safely by himself, the custodian of the same, as by law provided; that said ballots have not been exposed to the public, or handled by unauthorized persons, and have been identified as the ballots cast by the voters of said South Pendleton precinct

on June 5, 1888, and have been preserved intact; that they are genuine, and have not been tampered with; that they have been kept in the vault of the clerk's office of said county and state, locked in the ballot-box of said precinct, since their delivery into the custody of said Hartman, county clerk of said county and state, on June 5, 1888, continuously, until the canvass of the votes on June 12, 1888, when said box was removed into the clerk's office of said county, and for the purpose of finding the poll-book of said precinct, and then and there unlocked in the presence of the board of canvassers, and the ballots therein tied together in one package, as such said package was lifted up and out of said box by said Hartman, and by him at once returned into said box, and the said box was relocked in the presence of said board, and upon the conclusion of said canvass the said box and ballots so locked therein were returned to the said vault by said Hartman, where it and said ballots have remained continuously since said date until removed therefrom on the trial of this action, on July 16, 1888." And as a conclusion from such facts finds "that, as such ballots of said precinct, they are entitled to be admitted as the best evidence and recounted," etc.

From this statement, it becomes apparent why counsel for defendant is anxious to reach the evidence by his exception, and have the court pass on its admissibility as a matter of law, or failing in that, that the court shall regard and treat the proceeding under the statute to contest the election in the nature of a suit in equity so that the court may examine the evidence and try the case *de novo*.

Upon this last proposition, it is sufficient to say that the proceeding under the statute is to be tried as an action at law without the intervention of a jury, and it may be said that in all cases where the object of the action is to determine the right to an elective office, whether under the

statute or by an action in the nature of *quo warranto,* the ballots actually cast by the voters are the original evidence of the result of the election.

The remaining question suggested is, that the ballot-box and its contents were not admissible in evidence, for the reason that they have not been properly kept, or so kept as to preclude opportunity for tampering with the ballots.

The contention is, that the facts in evidence so impeach and discredit the genuineness of the ballots admitted by the court and recounted as to destroy their character as the best evidence, and therefore it was admissible to recount them, because the official count as declared, under the circumstances, was the better evidence, and should control in determining the result. It is admitted that in determining a contested election the evidence of the ballots actually cast will control that furnished by the official canvass, provided the ballots have been duly preserved and protected from the reach of any unathorized intermeddling or tampering.

But it is insisted, unless it is made to affirmatively appear that the ballots have been so carefully kept and protected as to place their identity beyond all reasonable doubt, they ought not to be allowed to overturn the official count. Hence it is earnestly urged that where the evidence in the record discloses that the ballots have not been kept and protected with that vigilant care which the law contemplates, or where they have been so exposed as to afford such opportunity for handling or tampering with them as to cast suspicion on their purity, they lose their character as the best evidence, and are not to be relied on in determining the result of an election, and therefore ought not to be admitted to overturn the official count.

At the outset, it may be said, that the official returns or canvass when duly certified is *prima facie* evidence that the result is as declared. As against ballots not properly

kept, and the identity of which is not shown, such official canvass, although secondary, is the better evidence. But the official canvass, unless made·so by statute, is never conclusive. As a *quasi* record it is entitled to the presumption of regularity and *prima facie* evidence of the integrity of the result of election as declared. But as between ballots shown or admitted to be the identical ballots cast by the voters and such official count, the ballots are the best evidence.

"It is a primary rule of elections that the ballots constitute the best, the primary evidence of the intention and choice of the voters." (*Hudson* v. *Solomon*, 19 Kan. 177; *Reynolds* v. *State*, 61 Ind. 423; McCrary on Elections, 291, 439; Cooley on Constitutional Limitations, 625.)

When, therefore, it is shown to the satisfaction of the court that it has before it the identical ballots cast by the voters, as between the ballots themselves and canvass of ballots by the election officers, the ballots are controlling. To show that they are the genuine ballots cast by the voters, any evidence.tending to show that they have been so kept and protected from tampering as to place their identity beyond reasonable doubt is admissible. The burden rests on the plaintiff; he must establish to the satisfaction of the court or jury, as the case may be, that the ballots are the genuine ballots cast at the election, otherwise they will receive no credence. When the ballot-box and the ballots therein of South Pendleton precinct were produced and offered in evidence, if it was shown that they had been properly kept and protected as the law required, they were the best evidence.

On the other hand, if it was shown that they had not been kept or protected with that zealous care which the statute contemplates, or so as to preclude opportunity from intermeddling with them, they are the weakest and most unreliable evidence. But this only goes to the credibility of such evidence, and not to its competency.

Evidence may be extremely weak, and in fact, as against other evidence, entitled to no credit, yet that does not effect its admissibility. The weight to be given to the evidence and its admissibility are diverse matters.

In *People* v. *Livingstone*, 79 N. Y. 288, Church, C. J., said: "Although it must be conceded that the security of the boxes were not made so perfect as to preclude the possibility and even some probability that access might have been had to them for improper purposes, yet I do not think the judge would have been justified in deciding as a matter of law that they had not been preserved inviolate, and in withdrawing the question from the jury."

And again: "The statute requires the ballot-boxes to be preserved undisturbed and inviolate, and it is incumbent on the party offering the evidence to show that they had been so kept, not beyond a mere possibility of interference, but that they were intact to the satisfaction of the jury. The burden was on the relator to satisfy the jury that the boxes had remained inviolate. The returns are the primary evidence of the result of an election. They are made immediately upon canvassing the votes, and the votes are canvassed at the close of the polls in public, and presumably in the presence of the friends of both parties. . . . . After the election, it is known just how many votes are required to change the result. The ballots themselves cannot be identified; they have no ear-marks. Everything depends upon keeping the ballot-boxes secure, and the difficulty of doing this for several months, in the face of temptation and opportunity, requires that the utmost scrutiny and care should be observed in receiving the evidence, etc. Every consideration of public policy, as well as the ordinary rules of evidence, require that the party offering this evidence should establish the fact that the ballots are genuine. It is not sufficient that a mere probability of security is proved, but the fact must be

shown with a reasonable degree of certainty. If the boxes have been vigilantly preserved, the ballots are the best and highest evidence, but if not, they are not only the weakest but most dangerous evidence. The jury might not be satisfied with the proof of identity, and yet be unable to find from the evidence that actual tamper-ing or fraud has been committed."

In the same case, in 13 Hun, the court say: "If the ballots voted at any election are produced on the trial of a cause like this, they are the very best evidence of the re-sult of the election. Of course, the jury must be satisfied of their inviolate preservation, otherwise they will receive no credence; but this does not affect their competency."

Judge Cooley says: "If, however, the ballots have not been kept as required by law, and surrounded by such securities as the law has prescribed with a view to their safe preservation as the best evidence of the election, it would seem that they should not be received in evidence at all; or if received, that it should be left to the jury to de-termine upon all the circumstances whether they consti-tute more reliable evidence than the inspector's certificate, which is usually prepared at the close of the election, and upon an actual count of the ballots as then made by the officers whose duty it is to do so." (Cooley on Constitu-tional Limitations, 625; *People* v. *Sackett,* 14 Mich. 320; *People* v. *Cicott,* 16 Mich. 116.)

According to their decisions, it is manifest that in a proceeding of this nature the ballots are receivable in evidence for the purpose of controverting the official count and ascertaining the actual result from the vote cast, and that it is for the jury or trial court, as the case may be, to determine, from all the facts and circumstances going to show that the ballots have been preserved invio-late, whether they are more reliable than the official count. Of course, the jury must be instructed or the court guided

by the principle of law that unless it is proved that the
ballots are genuine,—the identical ballots cast,—they
should be rejected, and not allowed to overturn the re-
sult as declared by the official count.   As a consequence,
the ballots and the proof of their identity was competent
evidence, and if competent, it was admissible.   The credi-
bility and weight to be attached to evidence is usually for
the jury, or the trial court when it is exercising the jury
function, and if it is satisfied from the evidence produced
that the ballots have been preserved intact and inviolate,
the court, governed by the law which makes them in such
case the best evidence, would recount the ballots, other-
wise they would receive no credence, and be rejected in
determining the result.

It may be admitted that the question is not free from
doubt, and apparently there is some conflict in the practice,
yet we have reached the conclusion, not without much hesi-
tation, it is true, that there was such a showing as to the
safe-keeping of the ballots; that they were comptent evi-
dence to go to the trial court to determine as a matter of
fact upon all the circumstances whether they had been so
kept as to preserve their identity, and to render them more
reliable evidence than the official count.

It seems to us, however, the better and more proper
way, especially in proceedings to contest an election under
the statute, to reach the question sought to have decided
is to inquire whether, upon the facts found by the trial
court, the conclusion to which it has come, viz., "the
ballots are the best evidence, and entitled to be recounted,"
is such as the law pronounces.   To do this the findings
should have been fuller and ought to have included the
facts that the ballot-box was delivered to its legal custo-
dian sealed; that the poll-book was delivered to him also,
and deposited in the vault; that the box was opened for
the purpose stated, and relocked and so returned to the

vault, and that his deputy and other persons had access to the vault.

Adding these facts to those already found, and which upon suggestion the court would have no doubt included in its findings, would there be error in the conclusion already drawn upon the facts as thus presented by the finding?

The assumption or the argument is, that the box when returned to the vault duly relocked, but not reasealed, created such an opportunity for tampering as to invite outrage with almost perfect immunity against discovery; that when opening the box when the poll-book was in the vault was without excuse, and an unlawful act committed by the contestant, whereby he made for himself and his friends an opportunity to intermeddle with the ballots without detection, and which the law had not given to him, but was designed to prevent, and that such a condition of facts so thus shown by the findings are inconsistent with that safe-keeping which the law contemplates as sufficient to identify the ballots and authorize them to be recounted.

Counsel says: *" When he broke the bond of secrecy which the law had placed around that ballot-box,* why did he not then and there, in the presence of other members of the board, reseal it, and in such a way as that its purity could not be questioned?"

The trouble with this argument is, that it is based on the supposition that the law directs and requires the ballot-box to be sealed, when it only requires the ballots to be enveloped and sealed, and deposited with the clerk.

It may be admitted that it was the duty of the plaintiff as its legal custodian to safely keep and preserve the box and its contents, and that any act, whether done by himself or others, which disturbed or violated the safeguard which the law had thrown about it, ought, at least, to find

its justification in the particular circumstances which rendered such act necessary, and be supplemented by the doing of such things as to place it *in statu quo*, or find its equivalent in the sense of the law for that purpose.

But sealing the box is not one of the safeguards which law has thrown about the ballot. Besides the cases shown, when by acts of omission or commission, through inadvertence or mistake, it sometimes happens that the poll-book is deposited in the ballot-box, or the returns inclosed in the envelope among the ballots, and it becomes necessary to procure them to make the canvass of votes, and the box is opened, or the envelope, as the case may be, such acts or omissions are treated as irregularities, and the provisions of the law in respect thereto·as directory only, and will not defeat the ballots as original evidence, provided they are properly accredited and have been safely kept and preserved inviolate. In *Hudson* v. *Solomon*, 19 Kan. 180, the ballot-box was unlocked for the purpose of taking out the poll-book, and under the facts the court regarded the opportunity· for tampering with the ballots, and discrediting them as·too slight for serious consideration.

In *O'Gorman* v. *Richter*, 31 Minn. 29, the ballots were not enveloped and sealed as required by section 88, and for this reason it was claimed that they were inadmissible. But the court say: "That the provisions of this section are merely directory, and that where it is clearly and satisfactorily proved that the ballots have been kept intact and inviolate, in the same condition as when counted by the judges of election, they are admissible in evidence, although not sealed up in envelopes as required by statute"; and further, that the trial court, "being satisfied of the genuineness of these ballots beyond a reasonable doubt, have admitted them," and that "certainly we, acting as an appellate court, cannot say they erred."

XVII. OR.—11

In *Dorey* v. *Lynn*, 31 Kan. 760, the ballots were wrong-fully opened and counted by the city council as a canvassing board, and they remained with the city clerk when they should have been placed in the custody of the county clerk, and yet as "the evidence and findings of the court below show that the ballots in this case were never tampered with in any manner except as already stated," the court say "the ballots were identified beyond all reasonable doubt," and as a consequence entitled to be recounted as the best evidence.

In *Patton* v. *Florence*, 17 Pac. Rep. 177, the poll-book was placed under cover and seal, except that they were inclosed in an envelope or package with the ballots, etc., and the court treated the matter under the facts as an irregularity, and not fatal to the proceeding.

The object of all such provisions is to secure the safe-keeping of the ballots, so that they may be easily identified in case they need to be resorted to in some judicial inquiry; and if they have been safely kept and protected from any tampering, the chief object of the law is subserved, although omissions or irregularities may have occurred such as we have adverted to.

The ballots are the best evidence of the will and choice of the voters, and if it is shown or the facts find that they have been securely kept and preserved inviolate, they are entitled to be recounted, that the will of the electors may be carried into effect, and allowed to prevail. Nor is there anything in *Kingsly* v. *Berry*, 90 Ill. 520, relied upon by counsel, inconsistent therewith. The court say: "The ballots may have been tampered with. There is not full proof that they were not. There was a motive for such tampering, at least upon the part of the appellee, if not others engaged with him. The wrong-doers should not be allowed to profit by his violation of the sanctity of

the ballot-box. He might do so were there ballots to be received as the indentical ones cast by the voters."

But it is to be noted in this case that "the court was not sure that it had before it the identical ballots which were deposited by the voters," and hence applied the rule which the law declares in such case, where, by intermeddling, suspicion is brought on their purity, they are not to be regarded as the best evidence and entitled to be recounted as against the official canvass.

In *Powell* v. *Holman*, 6 S. W. Rep. 508 (Ark.), the court found that after the vote had been canvassed and abstracted by the clerk as required by law, the ballots were placed for about one week in a library-room adjoining the clerk's office, and that this was an unsafe and exposed place, which afforded opportunity for them to be tampered with, and as a conclusion from these facts finds that the ballots are unworthy of credit as evidence.

In commenting upon this conclusion being such as the law pronounces upon the facts found, the court say: "The authorities are abundant that where ballots have been so exposed as to have afforded opportunity to be tampered with, and have not been guarded with 'that zealous care which will contravene all suspicion of substitution or change, they lose their presumptive purity, and are no longer to be relied on as evidence in a contest of judicial inquiry as to the result of an election." (McCrary on Elections, 293; Cooley on Constitutional Limitations, 625.)

Hence the court say, with reference to the ballots upon the facts found, that the trial court pronounced the judgment of the law when it declared such ballots as unworthy of credit as evidence and refused to recount them. But there are no facts found in that case, as here, in respect to the safe-keeping of the ballots; they were not zealous'y cared for, but were so exposed as to afford opportunity for parties or their friends to tamper with the

ballots, or add to or take from their number, and as a result, suspicion was brought on their purity and integrity, and the court rejected them as unworthy of credit.

Here the court finds that the box and its contents were securely and safely kept and preserved, that no one had tampered with them, and that, notwithstanding the box had been opened in the manner and for the purpose stated, the ballots therein were the genuine and identical ballots cast by the voters of South Pendleton precinct; and necessarily the conclusion which the trial court reached and finds upon this state of facts, viz., that such ballots "are the best evidence, and entitled to be recounted," is in conformity with such as the law declares.

In view of the fact that the contestant is the legal custodian of the box and its contents, it no doubt would have been better and more circumspect after the box was opened to have resealed it in the same presence, although there is no such requirement in the statute, and the failure to do so violated no law.

Upon the finding as to the safe preservation of the ballots, we are bound to assume there was satisfactory evidence to support it; or if we looked at the evidence in the record to ascertain whether there was any evidence tending to support such finding, we are confronted with the direct and positive, uncontradicted, and unimpeached testimony of all the sworn officers who have exercised any control over the box and its ballots that it had been safely kept relocked as the law required, and that its contents had not been handled or disturbed.

So that in whatever way the objection raised may be regarded, we discover no error, and must affirm the judgment.