## JOSEPH A. HUGHES *v.* EDWARD HOLMAN.

[S. C. 32 Pac. Rep. 298.]

1. ELECTION CONTEST — PRACTICE ON APPEAL.— Election contests are tried by the court without the intervention of a jury, but they are not equity cases, and not to be tried *de novo* on appeal.

2. IDEM — BALLOTS — CERTIFICATE OF BOARD OF CANVASSERS.— The ballots cast are always the primary evidence of the will of the electors, and while the returns of the canvassing board are *prima facie* evidence of the result of the election, the result of a recount must prevail over the presumption of the correctness of such returns.

3. CUSTODY OF BALLOTS — ADMISSIBILITY OF BALLOTS AS EVIDENCE.— When the ballots offered are shown to have been in the custody of the proper officers from the time they were cast until recounted, and to have been kept, though insecurely, in the manner prescribed by law, they are admissible in evidence in an election contest, and their identity becomes a question of fact for the trial court; but when it is shown that the ballots offered in evidence have not been kept in the custody of the proper officers, and have been left in an exposed and improper place where there was opportunity to tamper with them, they should not be received.

Multnomah County : E. D. SHATTUCK, Judge.

Election contest by Joseph A. Hughes against Edward Holman to determine who was legally elected coroner of Multnomah County at the election in June, 1892. Judgment for plaintiff and defendant appeals. Affirmed.

*Alfred F. Sears, Jr. (McGinn & Simon* on the brief), for Appellant.

*Daniel R. Murphy,* and *Francis A. E. Starr (Silvestone & Brodie,* and *W. E. Thomas* on the brief), for Respondent.

MOORE, J. — This was a special proceeding under the provisions of sections 2544, 2548, Hill's Code, to contest the right of the defendant to the office of coroner of Multnomah County, to which he was declared elected by

the county board of canvassers. The material facts alleged are, that at the general election held in June, 1892, plaintiff was the democratic, and defendant the republican, candidate for the office of coroner; that the board of canvassers returned defendant as elected by a small plurality; that a certificate of election was issued to him, and that he ever since has been such officer. As a ground for a recount of the votes the plaintiff alleges upon information and belief that small errors occurred in the count of each of the sixty precincts of the county, and such alleged misconduct of the judges and clerks of election of one precinct as to authorize the court to reject the returns therefrom. The defendant appeared after the service of the summons, and a stipulation was filed in lieu of an answer, whereby it was agreed that all the material allegations of the complaint should be denied, except that each was an elector of the county and a candidate for the office of coroner. The issues having been completed, the cause, by stipulation of the parties, was referred to Chas. N. Wait, Esq., to take and report the testimony. The recount of the votes resulted in no material change from the official count in any of the precincts, except No. 15, North Portland, where the following change occurred: The official count showed one hundred and six votes for defendant, and seventy-five for plaintiff; the recount showed one hundred and seven votes for plaintiff, and seventy-three for defendant. Some slight changes were discovered, and a few votes cast were rejected, in other precincts, but they do not disturb the result. The determination of the vote in precinct No. 15, North Portland, is decisive of the contest. The testimony was taken before the referee and reported back, and the defendant at the proper time moved the court for a judgment of nonsuit upon the ground that the evidence showed that the ballots had not been securely kept by the proper officer; that opportunity had been offered for tampering with them, and that there was no evidence offered to show that the ballots recounted were the identical ones

cast at the election. The court denied this motion, and prepared and filed findings of fact and conclusions of law, to which the defendant excepted, and judgment was rendered in favor of plaintiff, awarding the office to him and directing the county clerk to issue and deliver to him a certificate of election, from which judgment the defendant appeals. He contends that there was no evidence before the trial court to sustain a verdict or findings of fact, and that if the motion for a judgment of nonsuit were made at the proper time, the appellate court should review the testimony.

1.  In the case at bar the testimony was taken before a referee, and upon this evidence the cause was tried by the judge, and because that court had no advantage over this, in that it did not hear the witnesses nor observe their deportment, the appellant contends that it should now be tried *de novo.* In proceedings of this character the statute contemplates that it shall be tried as an action at law, without the intervention of a jury: *Hartman* v. *Young,* 17 Or. 155 (11 Am. St. Rep. 787; 20 Pac. Rep. 17); *Fenton* v. *Scott,* 17 Or. 190 (11 Am. St. Rep. 801; 20 Pac. Rep. 95). The object of the statute, probably, was to place the trial of an election contest with the court instead of a jury, for the reason that the former would be less liable to party influences and political motives than the latter. Party spirit, political bias and local prejudice might influence a jury in passing upon such questions, which would not affect a court; and for this reason, and in order to facilitate a speedy trial, the statute has wisely placed the trial of such causes within the jurisdiction of the circuit courts without the intervention of juries; but this would not make the cause equitable in its character, nor change the rules of practice upon appeal.

The determination of this cause rests upon the identity of the ballots recounted. The important findings of fact of the trial court are as follows: 29. That during the time the ballots were in the room opposite the clerk's office the clerk of the county court paid close attention

that no one should have an opportunity of tampering with or handling the ballots during the day, and in-structed the night watchman of the court-house to keep strict watch over said room during the night. 30. That the night watchman of the court-house kept strict watch over the room in which the ballots were stored during the night. 31. That said room is on what is known as the ground floor of the court-house ; the door to said room is furnished with a spring lock, and during the time said ballots were in the room the door of said room was locked. 32. That said room has two windows, which are not furnished with locks, and are distant from the ground about twelve feet. 33. That the vault used by the clerk of the county court is situate between the county clerk's office and the recorder of conveyances' office, and can be entered by a door either from the recorder's office or from the office of the clerk of the county court. 34. That during the night said vault was locked, and it would be impossible for anyone to enter. 35. That during the day the county clerk, or his deputies, never left the county clerk's office. 36. That certain members of the bar were permitted to enter the vault during the day, but no one entered the vault unless it was members of the bar, or persons of standing with whom the county clerk was acquainted. 37. That when the recount began by the referee, the respective packages of ballots cast by the electors in the different precincts of Multnomah County, Oregon, were handed to him by the clerk of the county court. 38. That the two packages of ballots of precinct No. 15, North Portland, were so handed to the referee by the clerk of the county court, and were at that time sealed; that said seals were broken by the referee and the ballots recounted by him, from which count it appears that Hughes received one hundred and seven votes, and Holman received seventy-three votes. 39. That said packages of ballots so handed by the clerk of the county court to the referee were the actual, iden-tical ballots as cast by the electors for precinct No. 15,

North Portland, and were not in any manner altered, erased, changed or tampered with by anyone.

The one question presented by this appeal is, was there any admissible evidence offered in the court below to support the findings of fact therein reached? Section 220, Hill's Code, provides that "the order of proceeding on a trial by a court shall be the same as provided in trials by jury. The findings of the court upon the facts shall be deemed a verdict, and may be set aside in the same manner and for the same reasons, as far as applicable, and a new trial granted." The findings of the trial court must stand as the verdict of a jury if there be any admissible evidence to support them, unless we can say, as a matter of law, that they are manifestly wrong. In *Fenstermacher* v. *State*, 19 Or. 508 (25 Pac. Rep. 142), LORD, J., after reviewing the authorities in support of this legal proposition, says: "The weight of evidence is for that court, and not for us, to determine, however much we might feel disposed to differ from it." The evidence is all set out in the bill of exceptions, and is reviewable on the motion for a nonsuit, not as a trial *de novo*, but to determine if there was any admissible evidence to support the findings. The election was conducted in pursuance of the requirements of an act of the legislative assembly, approved February 13, 1891, and commonly known as the "Australian Ballot Law." This act requires the county clerk to print the ballots upon white paper, and to deliver them to the sheriff, who transmits them to the judges of election. These ballots, when printed, shall state the number and name of the precinct they are intended for, and the date when the election will be held, and shall contain the names of all the candidates for office to be filled at the election. The ballots for each precinct shall be in a package by themselves, properly marked with the number contained in the package, and addressed to the judges of election, whose duty it is to deliver one of them to each elector to be prepared by him for voting, and after the polls are

closed, the law makes it the duty of the judges of election to destroy the remaining white ballots.

The evidence in the bill of exceptions shows that one thousand and two hundred white ballots were printed for precinct No. 15, North Portland; that several days before election they were sent by the printer to the county clerk in a package by themselves; that the county clerk, upon receiving this package, placed it with others in a vacant room of the court-house, across the hall from his office; that the door of this room was fastened by a spring lock, for which there were four keys; that the clerk had one, the janitor one, and each of the two watchmen one; that this room had windows about ten feet from the ground, which were unlocked; that after these ballots had remained in this room several days, the county clerk sealed the package for precinct No. 15, North Portland, by pasting a certificate over the string which was tied around it, and on Saturday preceding the election on Monday, he delivered this package to the sheriff; that the sheriff was unable to transmit it to the judges of election till the morning of the election, and that it remained in the court-house during that time; and when the package was delivered to the judges, they broke the seal, and two hundred and thirty-two ballots were cast; that the judges think they destroyed all the remaining white ballots as soon as the polls were closed; that the votes cast were canvassed by the judges and clerks of election in the presence of several persons of all political parties, and the returns thereof were made out and certified to by the proper officers, showing the result to be one hundred and six votes for Holman and seventy-five for Hughes; that the bystanders who were present at the canvass agreed with the judges and clerks upon the tally of the votes cast and reported; that when the canvass of the votes polled was completed, the ballots counted were arranged in two packages, with strings run through each and tied; that they were then wrapped in paper and sealed, and addressed to the county clerk; that these sealed ballots

were then placed in a smaller ballot-box with the certified returns, and this box placed in a larger one, which was then locked, and so returned by one of the judges to the county clerk. The county clerk placed this box with its contents, together with the ballot-boxes of the other precincts, in the vacant room where the white ballots had been kept, and wrote with chalk on each box the name and number of the precinct from whence it came, and these boxes remained in this room from Tuesday till Saturday, when the clerk, considering this room unsafe, removed the contents of the boxes and placed them in a vault in his office, where they remained till they were delivered by him to the referee who took the testimony in this cause.

The evidence also showed that the clerk did not have sufficient room in his office to store these ballot-boxes, and that he adopted this vacant room as an office for that purpose; that he frequently went into this room while the ballots remained there, for the purpose of receiving the returns from other precincts, some of which did not arrive till Thursday; that he instructed the janitor and watchman to carefully guard this room, which they did so far as they were able; that it was possible for a person with a key to have entered the room at night unobserved by the watchman, while he was on his round of duties in the upper rooms, but he does not think it probable; that when the ballots were carried to the vault they were put into boxes and record books put over them; that persons acquainted with the clerk could have passed through the vault from the clerk's office to the recorder's office; that the vault was locked each night; that during the day some person connected with the clerk's office was on duty all the time; that when the clerk delivered the ballots to the referee they did not appear to have been disturbed, and the clerk testified that they had been in his possession from the time he received them till he delivered them to the referee. The evidence further showed that when the testimony was being taken before the referee, the wit-

nesses reached through a transom and unlocked the door to this vacant room with a broom. The appellant claims that this state of facts shows that these ballots were not in the custody of the county clerk from Tuesday till Saturday; that during that time there was afforded an ample opportunity for abstracting ballots from those returned by the officers and substituting others therefor; that while none but official white ballots could have been substituted without detection, there was an opportunity to procure them from three sources: *First*, from the printing office where printed; *second*, from the package while it remained in the vacant room before it was sent out to the judges; and, *third*, that the ballots remaining after the polls were closed at precinct No. 15, North Portland, might not have been destroyed, and they might have been obtained from that place; that the recount showing such a material change from the official returns in this precinct conclusively proves that the ballots had been tampered with, and therefore the proof of their identity could not be established.

2. In the contest of an election under the statute, two presumptions arise: *First*, that the returns of the judges and clerks are correct; and, *second*, that the ballots have not been tampered with. The ballots cast constitute the primary evidence, in all cases, of the expressed will of the electors, while the returns are but secondary, and must always yield to the primary evidence. The certificate of a board of canvassers is merely evidence *prima facie*, showing for whom a majority of the votes appears to have been given, and it is now a well established doctrine that in a proceeding to test title to a public office, the certificate is not conclusive as to the result shown thereby, but the courts will investigate the facts of the election to ascertain the number of votes and for whom cast: High, Extr. Rem. §§ 61, 638, 639; Cooley, Const. Lim. § 623. When the identity of the ballots has been established, the result of a recount thereof differing from

the official returns must prevail over the presumption of the correctness of such returns.

3.   When the ballots are shown to have been in the custody of the proper officers from the time they were cast until recounted and kept as prescribed by law, although insecure, they are admissible in evidence in an election contest, and their identity becomes a question of fact for the trial court; but when it is shown that they have not been kept in the custody of the proper officers, and have been left in an exposed and improper place, where opportunity has been given for tampering with them, they should not be received in evidence to overcome the official count made by the election officers. Before any evidence should be received to overcome the *prima facie* correctness of the returns, the identity of the ballots should be established beyond a reasonable doubt. If this can be done, the fact that the ballots have for a moment, an hour, or a day, been in the custody of an unauthorized person, ought not to thwart the expressed will of the electors.   It is true that the returns should be guarded with jealous care, and all the forms of law should be observed, but these rules are only directory:   *O'Gorman* v. *Richter*, 31 Minn. 29 (16 N. W. Rep. 416).   If the rule were otherwise, and all the statutory provisions mandatory, the precinct canvassing board might falsify the returns, and by that means perpetuate in office, or elect, any person whom they chose.   The only act necessary upon the part of the judges and clerks of election for this purpose, would be to send the ballots cast by some unauthorized person to the county clerk, and it would not matter if it could be shown by the testimony of a multitude of unimpeachable witnesses that such person had exercised the greatest care ;   that the ballots when delivered to the county clerk were in the exact condition as when received; such evidence could not be admitted to overcome the *prima facie* correctness of the returns. There would be neither reason nor justice in such a rule. The identity of the ballots recounted is a question of

fact which the court must find from the evidence: *People v. Livingstone*, 79 N. Y. 283. The testimony of the three judges of election in precinct No. 15, North Portland, shows that the ballots were divided into two separate packages when the canvass was completed, and that a string was run through each package and then tied; that these packages were separately sealed and then addressed to the county clerk; that one of the judges delivered them to the clerk, and that he received them in that condition; that they had been in the clerk's possession and custody, as heretofore indicated, from that time till he delivered them to the referee, and that at such delivery the seals upon the packages of ballots had not been broken. This evidence certainly tended to establish the identity of the ballots, and the only question to be considered is whether such evidence was admissible. In *Hartman* v. *Young*, 17 Or. 150 (11 Am. St. Rep. 787; 20 Pac. Rep. 17), the evidence showed that the ballots had been properly sealed and placed in the ballot-box, which was duly delivered to the county clerk, who kept it in a vault from the fifth day of June to the twelfth day of that month, when he took it from the vault and carried it into the main office, where the vote was being canvassed, and, in the presence of the other members of the board, opened it for the purpose of finding the pollbook; that he immediately returned the ballots to the ballot-box, relocked it and returned it to the vault, which stood open during the day; that no one had a key to the ballot-box but himself, and that he and his deputy had a key to the vault; that various persons acquainted with the clerk were permitted to enter the vault and to remain there one or two hours; that the box remained in the vault undisturbed till called for in the contest, and had been safely kept, and had not been exposed to the public nor tampered with. From this evidence the trial court found that the ballots had at all times been in the custody of the proper officer, and were the identical ballots cast at the election. LORD, J., conceding that these ballots had

at all times been in the custody of the proper officer, and speaking of the admissibility of such evidence to prove their identity while so kept, says: "On the other hand, if it is shown that they had not been kept or protected with that zealous care which the statute contemplates, or so as to preclude opportunity from intermeddling with them, they are the weakest and most unreliable evidence. But this only goes to the credibility of such evidence, and not to its competency. Evidence may be extremely weak, and in fact, as against other evidence, entitled to no credit; yet that does not affect its admissibility. The weight to be given to the evidence and its admissibility are diverse matters."

Some authorities hold that where the ballots have been handled by unauthorized persons, or where there has been an opportunity to meddle with them, that they cannot be received in evidence: McCrary, Elect. § 278. In *Powell* v. *Holman*, 50 Ark. 85 (6 S. W. Rep, 506), the evidence showed that one of the clerks, on the night of the election, before the canvass was completed, took the ballots in a sack, unsealed, and the pollbooks and the tally-sheets, and put them in a wardrobe of the Odd Fellow's Hall, under a combination lock; that other orders held meetings in the same hall; that no one remained with the election returns and ballots, and that on the next morning the clerk returned the tally-sheets and ballots to the polling place, when the canvass was completed. The returns and ballots were then sent to the county clerk, who put them in a room called the "library," where they remained a week or more, and while there, the court finds that access could have been had to them through the insecure fastenings of the office, and for that reason held that the ballots were unworthy of credit as evidence. So, in *Kingery* v. *Berry*, 94 Ill. 518, the evidence showed that some twenty days after the election, the town clerk, in whose keeping the ballot-box was intrusted, with eleven other persons, one of whom was the petitioner, opened the box and handled the ballots; that

they took the ballots out of the box, unstrung them from the thread they were on, and placed them in a pile on the table ; that they were then counted and strung again, and upon this state of facts the court held that there had been an improper handling of the ballots, and that they were not admissible in evidence. Here the direct proof of the unlawful handling of the ballots and the reasons for rejecting them were much more apparent than in *Powell* v. *Holman, supra.* In *Dorey* v. *Lynn,* 31 Kan. 758 (3 Pac. Rep. 557), the court held that the ballots were admissible in evidence when it appeared that they had been opened and canvassed by the city council, and had been kept by the city clerk, when they should have been in the custody of the county clerk. So, in *People* v. *Livingstone,* 79 N. Y. 283, the evidence showed that the ballots had been kept at the police department under the general supervision of the police officers, when they should properly have been deposited with the police commissioners, and yet the court admitted them in evidence upon proof that they had not been disturbed. In the case at bar, it would seem that the evidence tended to show that the ballots were sealed when the canvass was completed ; that so sealed they were delivered to the county clerk ; that they remained in the custody of the county clerk, in a room adopted as his office, and in the vault, till he delivered them to the referee, and that when he delivered them to the referee the seals were unbroken. These constitute a chain of facts from which the trial court might reasonably infer that they were the identical ballots cast at the election, though there might possibly have been an opportunity to meddle with them. Such evidence, under the rule in *Hartman* v. *Young,* 17 Or. 150 (20 Pac. Rep. 17), was admissible, and it was the province of the trial court to find in accordance with the dictates of its judgment upon the facts presented ; and while this court might, from the same evidence, have reached a different conclusion, it is not in the power of an appellate court to review the findings of the trial court where there is evidence properly

admissible to establish such findings: Hayne, New Trial, § 288.

The fact that the ballots were sealed when the referee received them does not necessarily nor conclusively prove that the seals had not been disturbed. Any person who could abstract the votes cast and substitute others therefor, could reseal them in such manner as to avoid detection; and yet, it was such a fact as the trial court had a right to consider, and its conclusion should be binding upon this court.

The judgment is therefore affirmed.