[No. 9,240. Department One. — February 12, 1884.]

CHARLES M. COGLAN, RESPONDENT, *v.* M. R. BEARD, APPELLANT.

OFFICE — CONTESTED ELECTION — EVIDENCE — BURDEN OF PROOF. — In an action to contest the right of a party to an office to which he has been declared elected, the returns of the election boards should be received as *prima facie* true. In order to overcome this evidence by a recount of the ballots cast at the election, the contestant must affirmatively prove that the ballots have not been tampered with, and that they remained in the same condition as they were when delivered to the proper custody by the judges of election. If it appear to the satisfaction of the court that the ballots have not been tampered with, it should adopt the result as shown by the recount, and not as returned by the election board.

FINDINGS — ULTIMATE FACTS. — Findings should be of the ultimate facts put in issue by the pleadings, and should not be argumentative.

APPEAL from a judgment of the Superior Court of the county of Sacramento. The facts are stated in the opinion.

*John T. Carey,* and *Wm. H. Beatty,* for Appellant.

*W. C. Van Fleet,* and *S. Solon Holl,* for Respondent.

McKINSTRY, J. — This was an action under the provisions of the Code of Civil Procedure to contest the right of defendant to the office of county clerk of Sacramento, to which he was

declared elected by the board of supervisors. From a judgment in favor of plaintiff the defendant has appealed.

Any elector may contest the right of a person declared elected to an office, "for malconduct on the part of the board of judges, or any member thereof." (Code Civ. Proc. § 1111, subd. 1.) And in his written statement or complaint the contestant is required to set forth specifically "the particular grounds of such contest." (Code Civ. Proc. § 1115.)

In the case at bar the ground of contest alleged in the plaintiff's statement or complaint is, that in the several election precincts the boards of election "were guilty of malconduct, committed as follows: That said board of election counted and tallied ballots for the said M. R. Beard for the office of county clerk, upon which the said Beard's name did not appear, and that said board failed, neglected, and refused to count and tally ballots for C. M. Coglan, for the office of county clerk, upon which the name of said Coglan did appear." The averments of the complaint are specifically denied.

The ballots supposed to have been cast by the voters were recounted in the presence of the court. In nearly every precinct the recount resulted in a gain to the contestant and a loss to the defendant.

The results reached by the recount as to *two* of the precincts were rejected by the court below, the learned judge saying in the findings: "While there is not sufficient evidence *to satisfy my mind* that the ballots have been tampered with, or fraudulently manipulated in any way, still from the circumstance of the package having been opened, and a very considerable variance being found between the returns and the actual count of the ballots, I think it *unsafe* to adopt the recount, and *therefore* in this precinct I take the returns.

The packages of ballots which the court below considered it "unsafe" to treat as not having been tampered with or "fraudulently manipulated," — although the evidence was not sufficient to satisfy the mind of the judge that there had been such tampering or fraud — had been in the same custody as the packages assumed to have been sent from the other precincts. As to some of these, the names of the election officers were not written across the seals fastening the packages, nor were the

packages clearly identified. The packages were placed in a vault in the Hall of Records, of which the clerk retained the keys in his possession. The janitor of the court house, his assistant, and several members of the board of supervisors, each had a key to the room in which was the vault. The locks on the doors of the vault were ordinary tumbler locks, which could be unlocked by any person having a key to match the locks.

If the evidence on the part of the contestant satisfied the mind of the judge that the ballots from the two precincts had not been tampered with, he should have adopted the result of the recount, and not the returns from those two precincts. The action of the court below could be justified only because the evidence failed to overcome the presumption created by the returns — failed to satisfy the court that the ballots had not been tampered with. But if the evidence failed to prove that the ballots claimed to have been cast in two of the precincts had not been changed, how did the court reach the conclusion that the ballots from other precincts had remained unaltered — it appearing that those who had tampered with some might have tampered with all?

It is evident, however, the court did not base its rejection of the recount as to the two precincts upon the failure of contestant to establish affirmatively that the ballots had not been tampered with, but that they were rejected out of abundant caution, because it was "safer," the judge saying "there is not sufficient evidence to satisfy my mind that the ballots had been tampered with, or fraudulently manipulated in any way."

Thus the court below in effect held that as the ballots had been in charge of the county clerk, the presumption was that they had not been changed, and it was for the defendant to prove that fraud had been committed with reference to them. This idea appears throughout the findings. Thus the court finds that the package containing the ballots supposed to have been cast in precinct four, Sacramento City, "was brought into court intact," and that the package supposed to contain the ballots cast at precinct four and one half, Sacramento City, "was *likewise in good order.*" And again: "From all the other precincts in the county the ballots are returned *in good shape*—

not in every case complying strictly with the law, but there is not evidence indicating to my mind any tampering with the ballots."

The court below erred in assuming that the burden of proof was upon the defendant to prove that the ballots had been disturbed or fraudulently interfered with. Mr. Justice Cooley says: "The returns of the canvassing boards are *prima facie* evidence in the courts. . . . . If, however, the ballots have not been kept as required by law, and surrounded by such securities as the law has prescribed, with a view to their safe preservation as the best evidence of the election, it would seem that they should not be received as evidence at all, or if received, it should be left for the jury to determine upon all the circumstances of the case, whether they constitute more reliable evidence than the inspector's certificate, which is usually prepared immediately on the close of the election, and upon actual count of the ballots as then made by the officers whose duty it is to do so." (Const. Lim. side p. 625.)

McCreary in his work on "Contested Elections" (p. 209), lays down the rule: "Before the ballot boxes should be allowed in evidence to overturn the official count and return, it should appear affirmatively that they have been safely kept by the proper custodian of the law; that they have not been exposed to the public or handled by unauthorized persons, and that no opportunity has been given for tampering with them. If this is believed to be a rule founded upon a presumption that a fraud or crime has been committed, the answer is that the rule does no more than make choice between two presumptions of law, which in this instance come in conflict and cannot both prevail."

In *People* v. *Livingston,* 79 N. Y. 290, the Court of Appeals held the trial court erred in charging the jury that, to justify the rejection of the ballots as proof, it must appear affirmatively by direct evidence or from circumstances, that the ballot boxes had been interfered with and fraud committed, Church, C. J., saying: "The error is in putting upon the party against whom the ballot boxes are introduced the *onus* of proving that they had in fact been tampered with. . . . . The burden was upon the relator to satisfy the jury that the boxes had remained

inviolate; the returns are the primary evidence of the result of the election. . . . . The returns may be impeached for fraud or mistake, but in attempting to remedy one evil we should be cautious not to open the door to another and far greater evil. After the election it is known just how many votes are necessary to change the result; the ballots themselves cannot be identified — they have no ear marks. . . . . Every consideration of public policy, as well as the ordinary rules of evidence, require that the party offering this evidence should establish the fact that the ballots are genuine. . . . . If the boxes have been rigorously preserved, the ballots are the best and highest evidence, but if not, they are not only the weakest, but the most dangerous evidence. The jury *might not be satisfied with the proof of identity, and yet be unable to find from the evidence that actual tampering or fraud had been committed.*"

It is perfectly manifest that the court below failed to find directly upon the issue made by the pleadings — were the election boards guilty of malconduct in counting ballots for defendant which were not cast for him, and in failing to count ballots for plaintiff on which his name appeared? · The fourth finding commences: " There was *no malconduct nor misconduct* upon the part of any of the officers who conducted such election, and no intentional miscalling or improper tallying or counting of the ballots cast for the office of county clerk, but such errors as were made resulted from mistakes and oversight, and are indicated by the following statements of the votes cast in each precinct," etc.

Subsequently comes a statement of the returns from each precinct, and of the results arrived at by a recount of the ballots claimed to have been cast in each precinct.

The court found there was no "malconduct nor misconduct." If this was a finding on the issue the judgment should have been for defendant. But the court failed to find whether the election board in any precinct did or did not miscount the ballots. The findings at most suggest the *argument* that the election boards must have made mistakes *because* the recount showed that the boards must have made mistakes. But, as appears from the findings themselves, the results reached by the recount may not have been correct. And this because the find-

ings show that, in inquiring whether the ballots had been preserved inviolate, the court below lost sight of the rule applicable to actions of this character, that the returns are to be received as true *prima facie*, and the ballots are not better evidence to overcome the returns unless the contestant shall affirmatively prove that the ballots remain in the same condition as they were when delivered to the proper custody by the judges of election. It is not our function to express any opinion as to the *fact;* we say that the court below erred in applying the rule as to the burden of proof.

In *Coveny* v. *Hale*, 49 Cal. 552, was laid down the rule, followed ever since, that the findings must be either of the ultimate facts, or of such probative facts as that the court is enabled to say that the ultimate facts necessarily result therefrom. In the cause before us the court below failed to find the ultimate facts alleged and put in issue by the pleadings. And the argumentative finding does not support the judgment since the conclusion that the election boards must have made mistakes because the result of the recount did not accord with the returns of the boards, is a *non sequitur*. We cannot decide that the results reached through the recount are correct, inasmuch as the court erred in assuming that the ballots had been undisturbed, because it was not satisfied from the evidence that actual fraud had been committed.

Judgment reversed and cause remanded for a new trial.

Ross, J., and McKEE, J., concurred.

Hearing in Bank denied.