[No. 32. First Appellate District.—July 13, 1905.]

# R. S. CHATHAM, Respondent, v. J. H. MANSFIELD, Appellant.

ELECTION CONTEST—STATEMENT BY ELECTOR—DATE BEFORE FILING—OBJECTION UPON APPEAL.—Upon the contest of an election by an elector, where the statement, signed and dated the day before it was filed, shows that at the time of the election and canvass of the returns and at the date of the statement he was an elector, an objection not raised in the lower court cannot for the first time be urged upon appeal that the statement does not show that the contestant was an elector when the statement was filed.

ID.—CONSTRUCTION OF CODE—FORMER AND IMMATERIAL DEFECTS.—The literal rule stated in section 1117 of the Code of Civil Procedure, that a statement shall not be dismissed for want of form, should be held to apply not only to the statement of the grounds of contest therein referred to, but also to any other matter alleged in the statement. The same rule is to be applied to the statements and pleadings in election contests as would be applied to pleadings in other cases, and immaterial defects should be disregarded.

ID.—CONSTRUCTIVE SERVICE OF CITATION AT RESIDENCE OF DEFENDANT—DUE PROCESS OF LAW—PRESUMPTION.—The provision in section

1119 for a constructive service of the citation, in case the defendant cannot be found, by leaving a copy thereof at the house where he last resided, is not unconstitutional. Such constructive service constitutes due process of law, and the defendant must be presumed to know the law, and that after the return day of the election, if he absented himself, a citation might be left at his residence.

ID.—INSECURE BALLOTS—ACCESS OF PUBLIC—ABSENCE OF EXPLANATORY PROOF—RETURNS NOT CONTROLLED.—Where the envelopes inclosing the ballots of certain precincts were received by the clerk in a broken condition, so that they might be interfered with, and were so kept by the clerk for a time that others might have access to them, and were afterwards sealed up by him, such ballots, in the absence of explanatory evidence to establish their genuineness with reasonable certainty, are *prima facie* impeached, and cannot be received to control the official returns.

APPEAL from a judgment of the Superior Court of San Mateo County. Frank J. Murasky, Judge presiding.

The facts are stated in the opinion of the court.

C. W. Eastin, Edward F. Fitzgerald, and G. W. McEnerney, for Appellant.

George C. Ross, for Respondent.

COOPER, J.—The parties to this suit were rival candidates for the office of sheriff of San Mateo County at the election held in November, 1902. The returns from all the election precincts in the county being made, the board of supervisors canvassed them, and thereupon made an order that plaintiff had received 1,378 votes, and that defendant had received 1,441 votes, and that defendant was the duly elected sheriff.

Plaintiff filed a written statement for the contest of said election, which came on for hearing at a special session of the court commencing in December, 1902. The case was finally submitted in March, 1903, and in April following the court filed its findings, to the effect that plaintiff had received 1,219 legal votes, and the defendant had received 1,218 legal votes, and judgment was accordingly entered declaring plaintiff the duly elected sheriff of the county. From this judgment the defendant has appealed on the judgment-roll and a bill of exceptions.

The contest was brought and the proceedings had under title 2 (secs. 1111-1127, inclusive) of the Code of Civil Procedure. It is declared in section 1111 that "Any elector of a county, city and county, city, or of any political subdivision of either, may contest the right of any person declared elected to an office to be exercised therein" for certain causes enumerated in the section. Defendant contends that the statement filed is fatally defective in not alleging that at the time of filing it the plaintiff "is an elector." The statement is dated November 18, 1902, gives the date of the election, and the date when the board of supervisors met to canvass the returns, and it alleges that plaintiff was an elector "at all the times herein mentioned." It shows that at the time it was dated the plaintiff was an elector. If it had stated that "he is an elector," it would have referred to the time when the statement was made and signed. It was not filed until the following day, November 19th; but we do not think the ends of justice require us to presume that plaintiff was an elector on the eighteenth and not on the nineteenth day of November. Particularly is this so, as section 1117 of the Code of Civil Procedure provides: "No statement of the grounds of contest will be rejected, nor the proceedings dismissed by any court for want of form, if the grounds of contest are alleged with such certainty as will advise the defendant of the particular proceeding or cause for which such election is contested." The above section refers to the grounds of contest; but we think the liberal rule therein stated should be held to apply to any other matter alleged in the statement. The defect (if the statement may be considered defective) did not affect the substantial rights of the parties. (Code Civ. Proc., sec. 475.)

This is in accord with the views of the court in *Doty* v. *Jenkins*, 142 Cal. 498, [77 Pac. 1104]. There the lower court allowed the plaintiff to amend his statement by showing that he was an elector of "the fifth supervisorial district." It is true that in that case the forty days had not elapsed at the time the amendment was made, but the principle is stated. The court said: "An amendment to a statement of contest is to be construed by the same rule as an amendment to a complaint. Unless from the nature of the facts alleged, or otherwise, the contrary appears, it is to be deemed a statement of the facts existing at the commencement of the action

or proceeding. The amendment in question must be thus construed. It takes effect as if it had been originally incorporated in the statement."

The same rule is applied to the statement and pleadings in an election contest as would be applied to pleadings in other cases. (McCreary on Elections, secs. 431, 440.) In the latter section cited it is said: "It may be stated as a general rule in this country that statutes providing for contesting elections are to be liberally construed, to the end that the will of the people in the choice of public officers may not be defeated by any merely formal or technical objections. Immaterial defects in pleadings should be disregarded; necessary and proper amendments should be allowed as promptly as possible."

Here there was no special demurrer pointed to the defect now so strenuously urged. It does not appear to have been in any way called to the attention of the trial court. No objection to the jurisdiction of the court or to the evidence was made on the ground that the statement did not show plaintiff to be an elector. In *McDougald* v. *Hulet,* 132 Cal. 160, [64 Pac. 278], the court said: "Plaintiff, by bringing the defendant Boggs into court, and asking the court to find the amount due, and by allowing the court to pass upon the issue as though properly made, is estopped from now claiming that the matter was not the subject of a counterclaim. He will not be allowed to thus lull his adversary into repose until his claim is barred by the statute, and then raise a point which is lethal."

In the case at bar, if plaintiff was an elector of the county at the time he filed his statement, he had the right to contest defendant's election. He was before the court upon a complaint, which he evidently deemed sufficient. Defendant treated it as sufficient. It is now too late to ask this court to hold it to be mere waste paper.

Defendant was served with the citation by leaving a copy at his residence, the officer being unable to find him. Section 1119 of the Code of Civil Procedure provides that if the person whose right to the office is contested cannot be found, he may be served "by leaving a copy thereof at the house where he last resided, at least five days before the time so specified." It is claimed that such provision for constructive service is

unconstitutional, and that defendant could not be brought
into court except by personal service. If this were held to
be the law, the defendant, by absenting himself where he
could not be personally reached, might prevent a contest un-
der the provisions of the code. An election contest is in-
tended to be a summary proceeding, and is one in which the
people of the political subdivision in which the contest is
pending are interested. The defendant is presumed to have
known the law, and to have known that after the return day
of the election, if he absented himself, a citation might be
left at his residence. It was so left, and he must have re-
ceived it. The legislature have the right to provide for con-
structive service in such case. Due notice to the defendant
is essential to the jurisdiction of all courts, but such notice
may be either actual or constructive in certain cases as pre-
scribed by the law pertaining to the forum in which such no-
tice is given. If the legislature has prescribed a kind of no-
tice by which it is reasonably probable that the party pro-
ceeded against will be apprised of what is going on against
him, and an opportunity is given him to defend, and the no-
tice is given as the law requires, this will be held sufficient
and due process of law. (*Rockwell* v. *Nearing,* 35 N. Y. 314;
*Kennard* v. *Louisiana,* 92 U. S. 482; *Earle* v. *McVeigh,* 91
U. S. 507; *Sturgis* v. *Fay,* 16 Ind. 429, [79 Am. Dec. 440];
McCreary on Elections, sec. 426.)

A more serious question, and one which necessitates a re-
versal of the judgment, was the receiving in evidence of the
ballots from Baden, Colma, and Menlo Park precincts under
defendant's objection.

The judges of election in the various precincts are required
by law, as soon as the polls are closed, to canvass the votes
given at such election. in such precinct. The canvass must
be public, in the presence of the bystanders, and continued
without adjournment until completed and the result declared.
The judges are sworn officers, and the result declared by them
is *prima facie* correct.

In an election contest the ballots are the best evidence, and
may be used to overcome and set aside the result as declared
by the official canvass when their integrity can be satisfac-
torily established. It is intended by the statute that the bal-
lots shall be preserved inviolate and above suspicion, so that

they may be used in a contest.   Each ballot, as soon as the names marked on it as voted are read and verified, must be strung on a string by one of the judges, and must not thereafter be examined by any person, but must, as soon as all ballots are counted, be carefully sealed in a strong envelope, each member of the board writing his name across the seal. (Pol. Code, sec. 1259.)   A member of the board must, without its having been opened, deliver such envelope to the county clerk, nearest postmaster, or sworn express agent, for delivery to the county clerk, who shall indorse on such envelope the name of the party delivering it and date of such delivery.   On receipt of the envelope the clerk must file it, and keep it unopened and unaltered for twelve months, unless in case of a contest. (Pol. Code, secs. 1264, 1265.)   It was testified at the trial by the deputy county clerk that the "Colma package was delivered broken open to me. . . . It was delivered by Wells, Fargo & Company."   The county clerk testified that the packages from Colma, Baden, and Menlo Park precincts were all "broken open" when received; that the ends of the ballots and the tally sheets were there; "anybody could pull them out if they wanted to look at them; that is the way they came by Wells-Fargo."

Fox, a deputy clerk, testified that the packages or envelopes containing the ballots were filed, and then placed in the lower vault in the clerk's office, and kept there for several days; that the vault was open all the time.   The witness was then asked:—

"Q. Now, Mr. Fox, during that time that those pouches were in the lower vault, are you prepared to say that they were not interfered with by any person during the whole time that they were there until they were put in the upper vault?—A. I would not say positively that they were not interfered with; they were deposited in the vault, and we were going back and forth all of us at different times.

"Q. Well, this vault is open for all other persons?—A. Yes, sir, other people have access to the vault besides the clerk and his deputies."

This witness further testified that it was thought there might be some question as to these packages, and they resealed them and put them all in the upper vault, where they were locked and secured.

The lower vault, where the ballots were kept for several days, was used in connection with the county recorder's office; was not kept locked all the time, and was open to the public. After the envelopes containing the ballots had thus lain on the floor of the lower vault several days, they were placed in the upper vault, where not the clerk, but one of his deputies and a deputy recorder, had the combination. They were not then kept in the exclusive charge of the clerk or his deputy. While the packages lay in the lower vault many people, including political opponents of defendant, were in and about the office, and knew the condition of the envelopes. On the recount there was one less ballot in Baden precinct than the official canvass showed; in Colma precinct the official canvass showed four more ballots than were produced in court; and in Menlo Park precinct there was one more ballot produced in court than the official canvass showed. In the count in court, defendant suffered a net loss of thirty-six votes from that shown by the official count in these three precincts. The difference of six ballots between the official count and the ballots counted in court during the trial is certainly a strong circumstance tending to impeach the integrity of the ballots.

No election officer was called to prove either the identity of the ballots, or that the envelopes were ever sealed. It was not proven that the envelopes were sealed when delivered to Wells, Fargo & Company, nor who delivered them, or either of them. It was not attempted to be proven that Wells, Fargo & Company delivered them in the same condition in which they received them. It is said in McCreary on Elections (secs. 471, 473): "Such ballots, in order to be received in evidence, must have remained in the custody of the proper officers of the law from the time of the original official count until they are produced before the proper court or officer; and if it appear that they have been handled by unauthorized persons, or that they have been left in an exposed or improper place, they cannot be offered to overcome the official count, . . . but the better opinion seems to be that if the deviation from the statutory requirements relative to the manner of preserving the ballots has been such as necessarily to expose them to the public or unauthorized persons, the court should exclude them; but if the deviations have been slight, or of such a character as not necessarily to render doubtful

the identity of the ballots, the question of their identity may well go to the jury to be determined upon all the evidence."

It is said by Judge Cooley in his work on Constitutional Limitations (7th ed., p. 941): "If, however, the ballots have not been kept as required by law, and surrounded by such securities as the law has prescribed with a view to their safe preservation as the best evidence of the election, it would seem that they should not be received in evidence at all."

Our own court in the case of *Tebbe* v. *Smith*, 108 Cal. 107, [49 Am. St. Rep. 68, 41 Pac. 454], said: "One who relies, therefore, upon overcoming the *prima facie* correctness of the official canvass by a resort to the ballots must first show that the ballots, as presented to the court, are intact and genuine. Where a mode of preservation is enjoined by the statute, proof must be made of a substantial compliance with the requirements of that mode."

In *Russell* v. *McDonald*, 83 Cal. 78, [23 Pac. 183], it was said by the chief justice, in speaking of a failure of the election board to comply with certain sections of the Political Code: "Officers of election are, like all other persons, presumed to know the law, and their deliberate omission to follow directions designed to prevent fraudulent voting certainly calls for explanation. It casts suspicion upon their integrity, and is sufficient, *prima facie*, to make out a case of fraud. No doubt such omission is susceptible of explanation, and we are very willing to believe that the officers of those precincts erred through ignorance of the law, and were not actually guilty of fraudulent intent. But as the case is presented we cannot indulge in that presumption. The officers were not called as witnesses, as they should have been, to prove that they acted as they did through ignorance, and not with a fraudulent purpose; and in the absence of any rebutting proof on this point we feel constrained to hold that contestant made out a case of malconduct on the part of the election boards."

We may well apply the reasoning of that case to the question here. Why was it not proven that these envelopes were sealed and not opened by any one until placed in charge of Wells, Fargo & Company? Some one must have taken charge of the envelopes in the precincts, and delivered them to Wells, Fargo & Company. It seems that it would have been easy to

prove such fact.    It was not incumbent on defendant to prove
that votes had been taken out of those envelopes and changed.
Where such circumstances appear that it is apparent that
opportunities existed for evil-minded persons to have exam-
ined the ballots and changed them, their integrity is im-
peached.    It is at once apparent that the official canvass is
much more liable to be correct than a recount of ballots that
have been in so many suspicious places.

In the leading case of *People* v. *Livingston*, 79 N. Y. 279,
the chief justice said: "They [the returns] may be impeached
for fraud or mistake, but in attempting to remedy one evil,
we should be cautious not to open the door to another and
far greater evil.    After the election it is known just how
many votes are required to change the result; the ballots
themselves cannot be identified—they have no earmark.
Everything depends upon keeping the ballot-boxes secure.
. . . Every consideration of public policy, as well as the or-
dinary rules of evidence, require that the party offering this
evidence should establish the fact that the ballots are gen-
uine.    *It is not sufficient that a mere possibility of security is
proved,* but the fact must be shown with reasonable certainty.
If the boxes have been rigorously preserved, the ballots are
the best and highest evidence; but if not, they are not only
the weakest but the most dangerous evidence. . . . Where
ballots in an envelope sealed with the village seal are put by
the village clerk in an unlocked desk, containing also the vil-
lage seal, and situated in a room exposed to the public, and
the envelope is partly torn by some unknown person while it
remained in such desk, the ballots are not better evidence of
the result of the election than the returns of the judges."
(See, further, *People* v. *Burden,* 45 Cal. 241; *Coglan* v. *Beard,*
65 Cal. 61, [2 Pac. 737] ; *Ex parte Brown,* 97 Cal. 89, [31
Pac. 840] ; *Whipley* v. *McCune,* 12 Cal. 352; *Rhode* v. *Stein-
metz,* 25 Colo. 314, [55 Pac. 814] ; *Hartman* v. *Young,* 17 Or.
157, [11 Am. St. Rep. 787, and note, 20 Pac. 17] ; *Hughes* v.
*Holman,* 23 Or. 489, [32 Pac. 298] ; *Beall* v. *Albert,* 159 Ill.
127, [42 N. E. 166] ; *Ex parte Arnold,* 128 Mo. 260, [49 Am.
St. Rep. 557, 30 S. W. 768, 1036].)

Plaintiff relies upon an expression of Mr. Justice McFar-

land in *Hannah* v. *Green,* 143 Cal. 22, [76 Pac. 708], where it is said: "The question whether ballots have been sufficiently taken care of so as to preclude any reasonable suspicion that they are not in their original condition is a question which is largely within the judgment and discretion of the trial court, and its determination of that question should not be disturbed here if the evidence fairly warrants the conclusion which the court reached on that subject."

The learned justice was speaking with reference to the facts of that case, which were entirely different from the case at bar. In this case, if the evidence were such as to fairly warrant the conclusion reached by the trial judge, we would not interfere. While the decision of the trial court should not be disturbed if there is sufficient evidence to fairly support it, yet we cannot give it more weight than the law, in its application to the facts, would allow. The discretion of the trial court gives it power to decide upon conflicting evidence, and to consider all the facts and the credibility of witnesses; but upon a contest depending upon the integrity of ballots the question is as to whether or not they have been so guarded as to be the best evidence and entitled to be recounted. In this case we do not think there is sufficient evidence to sustain the finding of the court on the question.

The judgment is reversed.

Hall, J., and Harrison, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 12, 1905.