[Civ. No. 21127. First Dist., Div. One. Mar. 28, 1963.]

C. T. (CARL) BENSON, Petitioner, v. THE SUPERIOR COURT OF NAPA COUNTY, Respondent; JULIUS CAIOCCA, JR., Real Party in Interest.

552

Timothy J. Crowley for Petitioner.

No appearance for Respondents.

Coombs, Dunlap & Dunlap and Frank L. Dunlap for Real Party in Interest.

MOLINARI, J.—This is a petition for a writ of mandate to compel the Superior Court of Napa County to admit relevant testimony on the issue of 189 claimed illegal votes in an election contest action.

### Question Presented

Did the trial court properly sustain an objection to the admission of testimony of the claimed illegal votes on the ground that the written list of the number of illegal votes was not delivered to the defendant as provided in section 20052 of the Elections Code?[1]

### The Record

The petitioner, C. T. (Carl) Benson, hereinafter called the

---

[1]Said section provides: "When the reception of illegal votes is alleged as a cause of contest, it is sufficient to state generally that in one or more specified voting precincts illegal votes were given to the defendant, which, if taken from him, will reduce the number of his legal votes below the number of legal votes given to some other person for the same office. Testimony shall not be received of any illegal votes, unless the contestant delivers to the defendant, at least three days before the trial, a written list of the number of illegal votes, and by whom given, which he intends to prove. No testimony may be received of any illegal votes except those which are specified in the list."

All references hereafter, unless otherwise indicated, shall be to the Elections Code.

contestant, and the real party in interest, Julius Caiocca, Jr., hereinafter called the defendant, were opposing candidates for the office of Supervisor of the Third Supervisorial District, County of Napa, State of California, the election for said office taking place on November 6, 1962. The official canvass declaring the results of said election was made on November 20, 1962. It disclosed that the defendant received 11 more votes than the contestant. On December 18, 1962 the contestant filed a statement with the county clerk pursuant to section 20050 contesting the election and demanding a recount of the votes cast. The particular grounds therein stated consisted of allegations that numerous illegal votes were cast for the defendant. On the same day on which the statement was filed, the defendant consulted an attorney, Frank L. Dunlap, concerning the latter's representation of the defendant in the election contest. An order setting the hearing of the statement for January 15, 1963, was made by the presiding judge of the superior court. A citation was thereupon issued by the clerk directing the defendant to appear at the time and place specified in the order. The citation and a copy of the said statement and order were personally served on the defendant on January 8, 1963. On the next day, January 9th, at about 2 p.m., the defendant went to Attorney Dunlap's office where he signed a list of 18 claimed illegal votes cast for the contestant. Thereafter, and on the same day, the defendant left the County of Napa and went to Fort Bragg in Mendocino County.

The defendant stayed at the Driftwood Motel in Fort Bragg on the night of January 9th, moving the next day to the Bay Cities Motel in the same city. On January 11 the defendant departed Fort Bragg and went to Ignacio in Marin County where he spent the night at Rickey's Motel. The 12th of January was spent with friends in Sonoma County. The defendant returned to his residence in the City of Napa in the early morning hours of Sunday, January 13th.

The contestant had, in the meantime, prepared a list of 189 claimed illegal votes and delivered the same to the constable for service upon the defendant. The constable was unable to locate the defendant either at his office or his residence, and was told by someone at the defendant's office that the defendant was out of town and would not return until Monday, January 14th. On Friday, January 11th, the constable attached a copy of the said list on the door of the defendant's residence and on the same day filed with the county clerk his

return of service, reciting the foregoing data with reference to service and the defendant's absence, with the original of said list. On the same day (January 11th), Attorney Dunlap called at the county clerk's office and obtained a photostatic copy of the contestant's said list of claimed illegal votes. It also appears that on January 11th, a copy of the subject list was mailed to the defendant at his residence by registered mail.

On Saturday, January 12, the contestant was personally served with the defendant's list of claimed illegal votes. (No attorney's name appeared or was designated on said list.) The defendant testified at the hearing that when he arrived at his residence on January 13th there was no such list attached to his door or at his residence, but that on the afternoon of that day his attorney, Dunlap, called at his residence and showed him the photostatic list Dunlap had obtained from the county clerk. On Monday, January 14th, the list which had been forwarded by registered mail was tendered to the defendant, but he refused to accept it because there was a claim of 42 cents postage due thereon.

On Tuesday, January 15th, the trial of the election contest commenced at 10 a.m. in the superior court, at which time Attorney Dunlap appeared of record for the first time. The contestant called the county clerk as his first witness. Under direct examination the said clerk identified certain official documents consisting of the supervisorial district map, 3 precinct maps, a group of registration books, a group of rosters of voters and 29 original affidavits of 29 individual voters. The maps and affidavits were admitted into evidence without objection. The attorney for the contestant thereupon asked leave of court to interrupt the testimony of the county clerk in order to call "some of these witnesses out of order." Counsel for the defendant stated that he had no objection "to that," but that he wanted to ask the county clerk "a few questions, however, before they are examined." Defendant's counsel thereupon cross-examined the clerk concerning one of the precinct maps which had been admitted into evidence. He was interrogated concerning the setting up and creation of the precincts, the accuracy of the maps, certain changes in precinct boundaries, and the effect of voters moving from one precinct to another. The county clerk was also questioned on redirect examination concerning some of these matters, during which a map of all the supervisorial districts of Napa County was identified and admitted

into evidence on behalf of the contestant without objection. Counsel for the contestant then called an Edward J. Kewell to the stand.[2] An objection was thereupon interposed by the defendant to the taking of the testimony of said witness on the ground that section 20052 had not been complied with in that a list of the claimed illegal votes had not been delivered to the defendant at least three days before the trial. The objection was sustained. Leave was granted to the contestant, however, to establish such delivery. The contestant thereupon called the defendant as a witness. The matters hereinabove narrated concerning the occurrences prior to the trial (other than those appertaining to procedural matters and those contained in the constable's return, and such as were stipulated to) were developed during the examination of the defendant.

Upon the conclusion of the testimony of the defendant and arguments by respective counsel, the trial court stated that section 20052 had not been complied with and accordingly sustained the defendant's objection to the reception of testimony concerning any illegal votes. In announcing its ruling on the objection the court below expressed the opinion that because section 20052 contains no provision for substituted service the delivery contemplated by the section was that accomplished by personal service. The trial court was also of the opinion that an alternate mode of service was provided for by section 54, but that the contestant had failed to avail himself of its provisions.[3]

---

[2]The original affidavit of registration of a voter designated as "Edward J. Kewell" was one of the 29 affidavits and had previously been admitted into evidence as "Exhibit No. 12."

[3]Section 54 reads as follows: "Whenever any candidate files a declaration of candidacy, nomination paper, affidavit of acceptance of sponsor's declaration, acceptance of nomination or any other paper evidencing an intention to be a candidate for any public office at any election in this State with either the Secretary of State or a county clerk, he shall by such filing irrevocably appoint the Secretary of State or the county clerk with whom the filing is made and their successors in office his attorneys upon whom all process in any action or proceeding against him arising out of or in connection with any matters concerning his candidacy or the election laws may be served with the same effect as if the candidate had been lawfully served with process. The appointment shall continue until the day of election.

"If in any action or proceeding arising out of or in connection with any matters concerning his candidacy or the election laws it it [sic] shown by affidavit to the satisfaction of a court or judge that personal service of process against the candidate cannot be made with the exercise of due diligence, the court or judge may make an order that the service be made upon the candidate by delivering by hand to the Secretary of State or the county clerk appointed as his attorney for service of process, or to any person employed in his office in the capacity of assistant or

*Elections Code Section 20052*

The first inquiry in the present case is directed to the meaning of the language "unless the contestant delivers to the defendant, at least three days before the trial, a written list of the number of illegal votes. . . ." The interpretation of this phraseology of section 20052 has not heretofore been before the appellate courts of this state. ▓ We are therefore called upon to ascertain the intent of the Legislature pursuant to the fundamental rule of statutory construction that the court should ascertain such intent so as to effectuate the purpose of the law. (*Select Base Materials, Inc.* v. *Board of Equalization,* 51 Cal.2d 640, 645 [335 P.2d 672].) ▓ In arriving at such intent we will consider the purpose sought to be achieved and the evils to be eliminated. (*Lesem* v. *Board of Retirement,* 183 Cal.App.2d 289, 298 [6 Cal.Rptr. 608]; *Hidden Valley Municipal Water Dist.* v. *Calleguas Municipal Water Dist.,* 197 Cal.App.2d 411, 419 [17 Cal.Rptr. 416].) ▓ It is also a primary rule of construction that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them. (*Chavez* v. *Sargent,* 52 Cal.2d 162, 203 [339 P.2d 801].)

The precise question before us is the meaning of the word "deliver." Its dictionary definition, in the sense used in the subject statute, is "give, transfer: yield possession or control of: make or hand over: make delivery of." (Webster's New Internat. Dict. (3d ed.).) ▓ In its philological definition the word "deliver" denotes the physical act of transferring possession and implies a change of custody. It is apparent, therefore, that the word "deliver" is not restricted in its definition to manual tradition to the transferee, but that it may include any physical act by which the transferor effects a change of possession from himself to the transferee. Accordingly, it has within its connotation a transfer of pos-

deputy, one copy of the process for the defendant to be served, together with a copy of the order authorizing such service. Service in this manner constitutes personal service upon the candidate. The Secretary of State and the county clerks of all counties shall keep a record of all process served upon them under this section, and shall record therein the time of service and their action with reference thereto.

"Upon the receipt of any such service of process the Secretary of State or the county clerk shall immediately give notice of the service of the process to the candidate by forwarding the copy of the process to the candidate at the address shown on his declaration, nomination paper, affidavit, acceptance or other evidence of intention to be a candidate filed with that officer, by special delivery registered mail with request for return receipt."

session accomplished by leaving the thing with a third person or at the transferee's residence or place of business. We are thus confronted with the inquiry as to whether the Legislature intended to use the word "deliver" in its broad philological meaning, or whether it intended manual tradition in the sense of the common law rule of personal delivery, or whether it intended "personal service," other than by manual tradition as judicially defined by the courts of this state.

The court below equated the delivery of the list in question with the delivery of process, which in our state has been held to connote manual tradition to the person to be served in the sense of the " 'common law rule of personal delivery'. . . ." (See *Sternbeck* v. *Buck*, 148 Cal.App.2d 829, 833 [307 P. 2d 970].) It should be noted, however, that our courts have recognized a legislative differentiation between the formality of delivery in making service of process and the delivery of notices and papers other than process. (*Hunstock* v. *Estate Development Corp.*, 22 Cal.2d 205, 211 [138 P.2d 1, 148 A.L.R. 968].) ▆▆ A careful reading of the cases indicates that because the service of process is deemed jurisdictional it must meet the requirements of manual tradition within the meaning of the common law rule of personal delivery, unless the Legislature has specifically provided for some form of substituted service. (*Hunstock* v. *Estate Development Corp., supra*, p. 211; *Sternbeck* v. *Buck, supra*, p. 833; *Batte* v. *Bandy*, 165 Cal.App.2d 527, 533-536 [332 P.2d 439]; Code Civ. Proc., §§ 411-413; Corp. Code, §§ 3301-3306, 6500-6504.) Accordingly, the words "by delivering" as used in Code of Civil Procedure section 411 as used in relation to the service of process have been interpreted to mean the actual delivery of the process to the defendant in person or, in cases of corporations, to the person designated for that purpose in person. (*Holiness Church* v. *Metropolitan Church Assn.*, 12 Cal.App. 445 [107 P. 633]; *Hunstock* v. *Estate Development Corp., supra*, p. 209; *Sternbeck* v. *Buck, supra*, p. 833; *Batte* v. *Bandy, supra*, pp. 533-536.) It should be noted here, particularly, that in the case of the service of the citation provided for in election contests, pursuant to which the court acquires jurisdiction of the defendant, the Legislature has seen fit to provide for a form of constructive service where the defendant cannot be found, by providing for the leaving of a copy at the house where he last resided.[4] The constitutionality of

[4]Section 20081—Elections Code: "The clerk shall thereupon issue a citation for the defendant to appear at the time and place specified in

this form of constructive service has been upheld. (*Chatham v. Mansfield,* 1 Cal.App. 298, 301-302 [82 P. 343]; *Conlan v. Superior Court,* 12 Cal.App. 420, 421 [107 P. 577].)

In the case at bench we are not concerned with service of process, but with the service of a paper after service of process was made, and jurisdiction of the proceeding had been acquired. The list of voters which is the subject of this action is, in our opinion, analogous to the "bill of particulars" provided for in an action on an account. (Code Civ. Proc., § 454.) It is worthy of note that the language of section 454 of the Code of Civil Procedure pertaining to a bill of particulars is similar to that used in section 20052.[5] A comparison of the two statutes indicates a similarity of purpose which is aptly stated in *McCarthy v. Mt. Tecarte L. & W. Co.,* 110 Cal. 687 [43 P. 391]: "[I]t [speaking of section 454] is designed to protect the adverse party from embarrassment upon the trial, by enabling him to demand and obtain in advance a detailed statement of the items charged against him. If the demand is not complied with, then, for the refusal or gross neglect, the prescribed penalty may be exacted. If the demandant receives the copy long enough before the trial to enable him to examine it and prepare his defense, so far as he is concerned the statute has fulfilled its usefulness." (P. 692.) In section 20052 the demand is implicit in the statute itself. The purpose of section 20052 is plain. Its object is to give notice to the contestee of the number of illegal votes, and by whom given, upon which the contestant predicates his contest, long enough before trial to permit the contestee to examine the list and prepare his defense. (See *Freshour v. Howard,* 142 Cal. 501, 504 [77 P. 1101].)

In *McCarthy* the court held that service of the bill of particulars on the sixth day where the statute then required service within five days was sufficient under the circumstances, and was such as to warrant the court, in the exercise of its discretion, in not precluding the plaintiff from giving evidence of the account. In *Silva v. Bair,* 141 Cal. 599 [75 P.

the order, which citation shall be delivered to the sheriff and served upon the party at least five days before the time so specified, either: (a) Personally, or (b) If the party cannot be found, by leaving a copy at the house where he last resided."

[5]The pertinent portion of section 454 reads as follows: "It is not necessary for a party to set forth in a pleading the items of an account therein alleged, but he must *deliver* to the adverse party, within ten days after a demand thereof in writing, a copy of the account, or be precluded from giving evidence thereof." (Italics added.)

162], another case involving a bill of particulars, we find this language: "No objection was made at, or before, the trial that it was too general or defective. The only objection was, that it was not delivered within the statutory time. This, however, did not give the defendant an absolute right to have the evidence offered rejected at the trial. It was within the discretion of the court to determine whether, under the circumstances, the penalty of the statute should be enforced, and the evidence excluded." (P. 602.) (See also *Cromer* v. *Strieby*, 54 Cal.App.2d 405, 409-410 [128 P.2d 916]; *St. John* v. *Consolidated Construction Co.*, 182 Cal. 25, 28 [189 P. 276].) We see no reason why the rationale of *McCarthy* and *Silva* would not be applicable to section 20052. ▮ In the instant case the defendant's only objection is that the list was not personally served upon him within the statutory time. He does not deny receipt of the list, nor does he urge that he did not have sufficient time to study it or to prepare his defense. Had he made such an objection the trial court was specifically authorized under the provisions of section 20083 to continue the trial.[6] This latter statute has been construed to permit a continuance even where there has been a failure to serve the citation. (*O'Dowd* v. *Superior Court*, 158 Cal. 537 [111 P. 751]; *Hagerty* v. *Conlan*, 15 Cal.App. 643 [115 P. 762].) In the present case the lower court did not presume to exercise any discretion, but considered that the failure to personally serve the list at least three days before the trial made it mandatory upon the court to preclude the offered testimony.

We are satisfied, under the principles hereinabove alluded to, that the trial court should have exercised its discretion in determining whether the failure to deliver the list within the statutory time (if in fact there was such a failure) prevented the defendant from preparing his defense. ▮ This discretion is not only suggested by the analogies of the law applicable to "bill of particulars" cases, but it is dictated by the paramount public policy which is inherent in election contests. That policy calls for a determination of election contests on their merits, and for a construction of the election statutes

---

[6]Section 20083: "The court shall meet at the time and place designated, to determine the contested election, and shall have all the powers necessary to the determination thereof. It may adjourn from day to day until the trial is ended, and may also continue the trial before its commencement for any time not exceeding 20 days for good cause shown by any party upon affidavit, at the costs of the party applying for the continuance."

which will not defeat that end, "unless their language imperatively commands it." (*O'Dowd* v. *Superior Court, supra,* p. 542.) ▉ The spirit and purpose of the statutes applicable to election contests is stated thusly in *O'Dowd*: "A determination on the merits is what the statute mainly has in view. The proceedings are not of an ordinary adversary character such as is maintained between individuals asserting personal rights or interests The statute does not confer the right of contest upon the assumption that the personal rights of contending individuals to the office is of particular public moment. . . . ▉ As said in *Minor* v. *Kidder,* 43 Cal. 236: 'It is the wholesome purpose of the statute to invite inquiry into the conduct of popular elections. Its aim is to secure that fair expression of the popular will in the selection of public officers, without which we can scarcely hope to maintain the integrity of the political system under which we live. With this view it has provided the means of contesting the claims of persons asserting themselves to have been chosen to office by the people. . . . ▉ When such a statement is presented by an elector to the tribunal whose duty it is to investigate its merits, it should not be received in a spirit of captiousness, nor put aside upon mere technical objections designed to defeat the very search after truth which the statute intended to invite. . . . The public interests imperatively require that the ultimate determination of the contest should in every instance, if possible, reach the very right of the case.'" (Pp. 541-542.)

▉ We are convinced, moreover, that there was, in the instant case, a sufficient delivery of the list three days before the trial. This delivery consisted of the attachment of the list to the door of the defendant's residence on Friday, January 11th. The subject statute makes no reference to "personal service" or that the list be served "personally" or be "personally served." It merely says that it shall be delivered. ▉ As we have pointed out above, the purpose of the list is to acquaint the contestee of the claimed illegal votes so that he can prepare his defense. Any method of transmission to him which is calculated to put the list in his possession ought to suffice. ▉ If the delivery is not effected he has ample time to object; and upon a showing that he did not receive it, he is entitled to invoke the penalty prescribed by the statute. ▉ The efficacy of leaving papers incident to an election contest at the residence of the defendant has been recognized by the Legislature in its provision for

the service of the citation upon the defendant by this method when he cannot be found. (§ 20081.) If such service is adequate to acquire jurisdiction of the defendant in the contest, we can see no valid reason why it should not be deemed a sufficient delivery of the list in question after such jurisdiction has been obtained. In upholding the constitutionality of Code of Civil Procedure section 1119 (now Elections Code section 20081) in a case involving the service of the citation in this manner, the appellate court stated: "It is claimed that such provision for constructive service is unconstitutional, and that defendant could not be brought into court except by personal service. If this were held to be the law, the defendant, by absenting himself where he could not be personally reached, might prevent a contest under the provisions of the code. An election contest is intended to be a summary proceeding, and is one in which the people of the political subdivision in which the contest is pending are interested. The defendant is presumed to have known the law, and to have known that after the return day of the election, if he absented himself, a citation might be left at his residence. It was so left, and he must have received it." (*Chatham* v. *Mansfield, supra,* 1 Cal.App. 299, 301-302.)

Applying the rationale of *Chatham* to the present case, we have a situation where the defendant knew that he was the defendant in an election contest in which he was cited to appear for trial on January 15th. He is presumed to have known that the contestant was required to deliver the list in question to him at least three days before the trial, and that such might be delivered to his home either by messenger or by mail. If such delivery could only be effected by manual tradition, the defendant could frustrate the purpose of determining the contest on its merits by absenting himself, as he did, until two days before the trial.

The legislative intent to permit methods of service other than that by manual tradition in cases involving the service of notices and papers after jurisdiction has attached, is demonstrated by Code of Civil Procedure section 1011, which provides for service by "delivery" in the manner therein specified upon a party or his attorney.[7] ▮ While Code of

---

[7] *Section 1011 substantially provides that the service of a notice or paper "may be personal, by delivery to the party or attorney on whom the service is required to be made" by leaving the same at the office of the attorney within certain hours, with a person over 18 years of age at the attorney's residence during other hours, or by leaving the same*

Civil Procedure section 1011 is not specifically made applicable to the Elections Code, we are satisfied that the methods therein provided would be applicable to the accomplishment of the delivery provided for in section 20052. We are persuaded in this conclusion by again analogizing to the procedure applicable to bill of particulars. While we have been unable to find any case in this state which has defined the required method for service or delivery under Code of Civil Procedure section 454, we take judicial cognizance of the time-honored and accepted practice of legal practitioners to make both service of the demand and of the bill of particulars itself in the manner provided for in section 1011 of the Code of Civil Procedure. It should be noted further, that the ''delivery'' made pursuant to section 1011 of the Code of Civil Procedure has been held to be personal service when made through the instrumentality of the mails. (*Hunstock* v. *Esstate Development Corp., supra,* 22 Cal.2d 205, 211; *Heinlen* v. *Heilbron,* 94 Cal. 636, 640 [30 P. 8] ; *Shearman* v. *Jorgensen,* 106 Cal. 483, 485 [39 P. 863] ; *Colyear* v. *Tobriner,* 7 Cal.2d 735, 743 [62 P.2d 741, 109 A.L.R. 191] ; Code Civ. Proc., § 1012.) The contestant did not avail himself of the methods provided in Code of Civil Procedure section 1011, except by the use of the registered mail which proved ineffective because of the lack of sufficient postage. ■ Nor do we believe that there was a delivery to the defendant's attorney. No such service was attempted. The voluntary obtaining of a copy by the defendant's attorney from the county clerk did not constitute such a delivery, notwithstanding it may have amounted to notice of the existence of the list and its contents to the defendant (on the basis that notice to an attorney is constructive notice to the principal when the attorney is acting for the principal in a particular matter (*Atkinson* v. *Foote,* 44 Cal.App. 149, 165 [186 P. 831])) so as to make it a circumstance for the trial court's consideration in the exercise of the discretion discussed above.

### Elections Code Section 54

■ The contention is made that the Legislature has specifically made provision for an alternate method of service by the enactment of section 54, and that where personal service by manual tradition cannot be had, the contestant is restricted to the method provided in this section. This section

---

with a person over 18 years at the party's residence during certain hours, or by putting the same in the mail to the attorney or party where service cannot be had in the manner in said section specified.

provides that personal service may be effected by service upon the Secretary of State or the county clerk upon the obtaining of an order of court directing such service. The contestant, here, did not avail himself of this procedure. A close reading of the section, however, indicates that by its very terminology it has to do with *process*. As we have hereinabove pointed out, we are not here concerned with process. Our conclusion that section 54 applies only to process finds support in Code of Civil Procedure section 411, subdivision 8, which provides, in essence, that if suit is brought against a candidate for public office and he cannot be found within the state after diligent search, *summons* may be served upon him as provided in section 54.

### Was There a Waiver of Compliance With Section 20052?

 Compliance with the provisions of section 20052 may be waived. (*Patterson* v. *Hanley,* 136 Cal. 265, 277 [68 P. 821, 975].) In *Patterson* it was held that absence of an objection to the failure to furnish the list of illegal votes in the trial court amounted to a waiver of compliance with the statute. We are of the opinion that there is such a waiver in the present case. While an objection was here interposed in the court below, it was not timely made. The objection was interposed at the time the witness, Kewell, was called to the stand. Testimony had been previously adduced through the county clerk without objection. It is obvious from a reading of the record that the testimony of the county clerk as to the maps and registration affidavits was presented as a foundation for the proof of illegal voting. In our opinion such objection must come before *any* testimony is received as to *any* illegal votes. We once again turn to the "bill of particulars" cases for analogy. The language of section 454 of the Code of Civil Procedure, providing that unless a copy of the account is delivered as therein provided the party will "be precluded from giving evidence thereof," has been interpreted to mean that if the adverse party proposes to object to the introduction of evidence, he may not wait until the trial, but previous to the trial must move for and obtain an order excluding the evidence. (*McCarthy* v. *Mt. Tecarte L. & W. Co., supra,* 110 Cal. 687, 693; *Connor* v. *Hutchinson,* 17 Cal. 279; *Glogau* v. *Hagan,* 107 Cal.App.2d 313, 321 [237 P.2d 329].)

It is therefore ordered that a peremptory writ issue directing the respondent court to receive relevant and material tes-

timony of the 189 votes asserted by the contestant to be illegal votes.

Bray, P. J., and Sullivan, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied May 22, 1963.